"THE MRS. G. B. MILLER & CO. TOBACCO MANUFACTORY" v. MATTHIAS COMMERCE.

A declaration charging defendants with fraudulently and falsely selling goods of his own fabrication as the manufacture of the plaintiff, by which the plaintiff was deprived of sales in the market, sets forth an actionable injury.

On demurrer to declaration.

The following is the declaration filed by the plaintiff:

The Mrs. G. B. Miller & Co. Tobacco Manufactory complain of Matthias Commerce, being in the custody of the sheriff of the county of Hudson, of a plea of trespass on the case:

For that whereas they, the said plaintiffs, for divers years before, and at the time of the committing of the grievances hereinafter next mentioned, did manufacture, vend and sell, and still do continue to manufacture, vend and sell for profit, divers large quantities of a certain smoking tobacco, called Mrs. G. B. Miller & Co.'s Best Smoking Tobacco, which said smoking tobacco the said plaintiffs were then and still are used and accustomed to manufacture, put up, and sell in packages

respectively wrapped up in blue paper wrappers, having the following, amongst other words, printed thereon that is to say, "Mrs. G. B. Miller & Co. Best Smoking Tobacco, 97 Columbia Street, New York," to wit, at Hoboken, to wit, at Jersey City, in the county of Hudson.

And whereas the said plaintiffs, before and at the time of committing the grievances hereinafter next mentioned, had gained and acquired great fame and reputation with the public on account of the excellent quality of the said smoking tobacco so by them manufactured, vended and sold, and continued to be manufactured, vended and sold as aforesaid, whereby the said plaintiffs daily acquired and obtained great gain and profit, to wit, at, &c., aforesaid. Yet the said Matthias Commerce, well knowing, the premises, but wickedly and wrongfully, subtly and unjustly intending to injure the said plaintiffs in their said sale of the said smoking tobacco and to deprive them of the great gain and profits which they, the said plaintiffs, would otherwise have acquired by manufacturing, vending and selling the said smoking tobacco as aforesaid, to wit, on the eighteenth day of January, one thousand eight hundred and seventy-eight, and on divers other days and times between that day and the day of the commencement of this suit, to wit, at Jersey City, in the county of Hudson, aforesaid, did wrongfully, knowingly, injuriously, deceitfully and fraudulently, against the will and without the license or consent of the said plaintiffs, manufacture and make and cause to be manufactured and made, divers, to wit, ten thousand packages of smoking tobacco of the size, shape, color and general appearance of and in imitation of the said smoking tobacco manufactured and sold by the said plaintiffs as aforesaid, and did wrap and cause to be wrapped up the said last-mentioned packages of smoking tobacco in blue paper, having the following amongst other words printed thereon, that is to say: "The Mrs. C. B. Müller & Co., Best Smoking Tobacco, 437½ Grove street, Jersey City," in order to denote that such smoking tobacco was the genuine Mrs. G. B. Miller & Co. Best Smoking Tobacco, manufactured, vended

and sold by the said plaintiffs, and did knowingly, wrongfully, injuriously, deceitfully, and fraudulently vend and sell for his own lucre and gain the said last-mentioned packages of smoking tobacco by the name and description of The Mrs. G. B. Miller & Co. Best Smoking Tobacco which had been manufactured, vended and sold by the said plaintiffs, whereas in truth and in fact the said plaintiffs had never been the manufacturers, venders or sellers thereof or any part thereof.

By means of which said premises the said plaintiffs have been fraudulently, deceitfully, wrongfully and injuriously hindered and prevented by the said Matthias Commerce from selling, vending and disposing of divers large quantities, to wit, ten thousand packages of the said Mrs. G. B. Miller & Co. Best Smoking Tobacco, which the said plaintiffs would otherwise have sold, vended and disposed of, and the said plaintiffs have also been deprived of divers great gains and profits which would otherwise have accrued to them, the said plaintiffs, from the sale thereof, and have been otherwise greatly injured in the selling and vending of the said Mrs. G. B. Miller & Co. Best Smoking Tobacco, to wit, at, &c., aforesaid.

And whereas, also, the said plaintiffs, heretofore, to wit, on, &c., at, &c., aforesaid, did manufacture, vend and sell and continue to manufacture, vend and sell, and still do continue to manufacture, vend and sell for profit, divers large quantities of a certain smoking tobacco called Mrs. G. B. Miller & Co.'s Best Smoking Tobacco, which said smoking tobacco the said plaintiffs were then and still are used and accustomed to manufacture, put up and sell in packages respectively wrapped up in blue paper wrappers having the following amongst other words printed thereon, that is to say: "Mrs. G. B. Miller & Co. Best Smoking Tobacco, 97 Columbia street, New York," to wit, at, &c.

And whereas the said plaintiffs, before and at the time of committing the grievances hereinafter next mentioned had gained and acquired great fame and reputation with the public on account of the excellent quality of the said smoking

tobacco so by them manufactured, vended and sold and continued to be manufactured, vended and sold as aforesaid, whereby the said plaintiffs daily acquired and obtained great gain and profit, to wit, at, &c., aforesaid.

Yet the said Matthias Commerce, well knowing the premises, but wickedly and wrongfully, subtly and unjustly intending to injure the said plaintiffs in their said sale of the said smoking tobacco, and to deprive them of the great gain and profits which they, the said plaintiffs, would otherwise have acquired by manufacturing, vending and selling the said smoking tobacco as aforesaid, to wit, on the eighteenth day of January, one thousand eight hundred and seventy-eight, and on divers other days and times between that day and the day of the commencement of this suit, to wit, at, &c., aforesaid, did wrongfully, knowingly, injuriously, deceitfully and fraudulently, against the will and without the license or consent of the said plaintiffs, manufacture and make, and cause to be manufactured and made, divers, to wit, ten thousand packages of smoking tobacco in imitation of said tobacco manufactured and sold by the said plaintiffs as aforesaid, and did wrap, and cause to be wrapped up, the said last-mentioned packages of smoking tobacco in blue paper, having the following, amongst other words, printed thereon, that is to say : "The Mrs. C. B. Müller & Co. Best Smoking Tobacco, 437½ Grove street, Jersey City," in order to denote that such smoking tobacco was the genuine Mrs. G. B. Miller & Co. Best Smoking Tobacco, manufactured, vended and sold by the said plaintiffs, and did knowingly, wrongfully, injuriously, deceitfully and fraudulently vend and sell, for his own lucre and gain, the said last-mentioned packages of smoking tobacco, by the name and description of the Mrs. G. B. Miller & Co. Best Smoking Tobacco, which had been manufactured, vended and sold by the said plaintiffs, whereas in truth and in fact the said plaintiffs had never been the manufacturers, venders or sellers thereof, or any part thereof.

By reason of which said premises, the said plaintiffs have been fraudulently, deceitfully, wrongfully and injuriously hin-

dered and prevented by the said Matthias Commerce from selling, vending and disposing of divers large quantities, to wit, ten thousand packages of the said Mrs. G. B. Miller & Co. Best Smoking Tobacco, which the said plaintiffs would otherwise have sold, vended and disposed of, and the said plaintiffs have also been deprived of divers great gains and profits, which would otherwise have accrued to them, the said plaintiffs, from the sale thereof, and have been otherwise greatly injured in the selling and vending of the said Mrs. G. B. Miller & Co. Best Smoking Tobacco, to wit, at, &c., aforesaid, to the damage of the said Mrs. G. B. Miller & Co. Tobacco Manufactory of five thousand dollars, and therefore they bring their suit, &c

Argued at November Term, 1882, before BEASLEY, CHIEF JUSTICE, and Justices KNAPP and DIXON.

For the demurrer, *E. D. Deacon.*

*Contra, S. A. Besson.*

The opinion of the court was delivered by

KNAPP, J. The foregoing declaration, to which the defendant has filed a demurrer, avers that the plaintiffs prepared, vended and sold, for profit, a certain kind of smoking tobacco called and well known to the public as " Mrs. G. B. Miller & Co.'s Best Smoking Tobacco," which they were accustomed to sell in packages wrapped in blue paper with the words " Mrs. G. B. Miller & Co.'s Best Smoking Tobacco, 97 Columbia street, New York," printed thereon ; and that the defendant, intending to injure them in their sales and deprive them of their profits, deceitfully and fraudulently prepared and made smoking tobacco in packages of the same size, shape, color and appearance, with the words " The Mrs. C. B. Müller & Co. Best Smoking Tobacco, 437½ Grove street, Jersey City," in imitation of the goods of the plaintiffs, and fraudulently represented and sold the same as the article manufactured, vended

and sold by the plaintiffs, when, in truth, the plaintiffs had not manufactured the same ; by reason of which the plaintiffs were deprived of the sale of their goods and the consequent profits.

The question is whether this state of facts presents an actionable injury.

It is not called for in this case to follow the demurrant in his discussion of the rules specially applicable to suits for the appropriation of others' trade-marks. The case here presents a grievance analogous to that in some, but not all its features.

Trade-marks are protected as such, as a species of property ; not that one can have an exclusive right in the signs, words or symbols used, *per se;* because one may stamp his cloth with the same mark or sign that another has acquired the exclusive right to use on his manufacture of iron. But when one has caused a particular species of manufacture to be characterized by certain marks or symbols, and given the article such currency in trade that it is identified with the mark, the law holds him to be possessed of a property right in such mark in connection with that species of manufacture, which it protects by action or injunction against any unlicensed use of it by others. Intentional fraud in such use is not essential to entitle the owner to protection. The injury is complete if the same label or mark is used which recommends the article to the public by the established reputation of another. *Coffeen* v. *Bunton,* 4 *McLean* 516 *; Dale* v. *Smithson,* 12 *Abb. Pr.* 237 *; Ainsworth* v. *Walmsley, L. R.,* 1 *Eq.* 518. To violate such right is a legal fraud.

But there is another type of injury to the same substantial right, distinguished mainly by the essential feature presented, of actual fraudulent intent in its perpetration. This wrong the courts have ever been equally swift to redress. It is said that the markets are free and open to make and sell any lawful commodity which one has sufficient skill and energy to fabricate and vend, unless there exist in some other the protection which the law of patents affords, and this is doubtless

true; but every one should be and is required to depend for his success upon his own character and fame, and the quality of his own productions. He may not sail under false colors and sell his productions for those of others. To do so is to impose upon the public, and especially to defraud him whose right place in the market is filled with spurious goods. That is not fair competition; it is closer akin to piracy. The inventor of an unpatented article has no exclusive right to make and vend it; but if others make and sell it, they have no right to put it upon the public as the manufacture of the inventor, nor to adopt his label or trade-mark, nor one so like his as to lead the public to suppose that the article to which it is affixed is the manufacture of the inventor. *Davis* v. *Kendall*, 2 *R. I.* 566.

The legal wrong is in fraudulently supplanting the maker of the genuine article by a false one sold as his own; whether it be by the adoption of his mark or by any deceit and false representation likely to deceive the public and accomplish that end, is material only in form. The injurious result is the same if the wrong be committed in either way. The cases differ only in their requirements of proof.

In *Wotherspoon* v. *Currie*, 5 *L. R.* (*H. L. Cas.*) 508, it is said by Lord Chelmsford that where a trade-mark is not actually copied, fraud is a necessary element in the consideration of every question of this description—that is, that the party accused must have done the act complained of with the fraudulent design of passing off his own goods as those of the party entitled to the exclusive use of the trade-mark.

*Crawshay* v. *Thompson*, 4 *M. & G.* 357, is a case in pointed illustration of the legal rule in frauds of this character. The declaration there alleged that the defendants fraudulently sold certain bars of iron as and for, and under the false color and pretence that the same were bars of iron of the genuine manufacture of the plaintiff. The right of recovery on proof of the averment was not questioned. The earlier English cases bearing on the subject are there referred to and need no citation here.

The declaration here does not count upon the unlawful adoption by defendant of plaintiff's trade-mark, but charges that the defendant sold his goods under the representation and pretence that they were the genuine goods manufactured by the plaintiff, which representations and pretences were false and fraudulent; whereby they were to an extent injurious to them—shut out of the market; and that as devices in aid of their fraud, they fabricated deceptive imitations of the plaintiff's label and packing.   The cases upon this subject all hold this to be an actionable injury.   The underlying principle is that one who, by making representations, knowingly false, causes injury to another, is liable for the consequences of his falsehood.   The following are cases bearing upon this subject: *Sykes* v. *Sykes,* 3 *B. & C.* 541; *Archbold* v. *Sweet,* 5 *C. & P.* 219; *Blofeld* v. *Payne,* 4 *B. & Ad.* 410; *Thompson* v. *Winchester,* 19 *Pick.* 214; *Lemoine* v. *Santon,* 2 *E. D. Smith* 343; *Marsh et al.* v. *Billings et al.,* 7 *Cush.* 322; *Holmes* v. *Holmes et al.,* 37 *Conn.* 278; *Morison* v. *Salmon,* 2 *M. & G.* 385.

In the case last cited the declaration used was in form and in all its essential averments like the one before us, and was brought under criticism on motion in arrest of judgment. The point principally made against it was not that action would not lie for such fraud, but on the sufficiency of the averment of a false representation by the defendant that the goods sold by him had been prepared by the plaintiff.   It was held sufficient by all the judges, and judgment passed for the plaintiff.

A precedent is found for this declaration in Sykes *v.* Sykes, above referred to.   Also in 2 *Chitty Pl.* 697, 698.

The case of *Marsh et al.* v. *Billings et al., supra,* was an action grounded upon the same character of injury as that counted upon by the plaintiff in this suit.   The defendant there was charged with holding himself out as, and falsely representing himself to be, authorized by the proprietor of a large hotel to convey guests between the hotel and the principal railway station, and using upon his coaches the signs and

devices with which the plaintiff marked his carriages, thus obtaining passengers in fraud of the plaintiff, who, by agreement with the proprietor of the hotel, had the exclusive patronage of the house and the sole right to place the hotel name upon his vehicles. The same principle was there applied, and the right of action maintained—not on the ground that the defendant might not rightfully carry passengers between the hotel and railway, nor on the ground that he might not put the name of the hotel on his coaches as indicating where he would carry persons to whom he might honestly engage his services, but on the ground that he could not fraudulently take away the plaintiff's passengers by passing himself off upon the public as possessed of patronage and privilege which the plaintiff held exclusively, or designedly use in aid of his fraud the signs which the plaintiff had rightfully adopted.

Indeed, the cases are in entire harmony in maintaining the principles upon which the plaintiff's action proceeds.

The demurrer should be overruled, with costs.