AMOS H. VAN HORN, LIMITED,

*v.*

DOMINICK COOGAN et al.

1. One trader has no right to use a name, a mark, letters or other *indicia* by which he may induce purchasers to believe that the goods he is selling are the goods of a rival trader.

2. Where one trader is attempting to palm off his goods as the goods of his rival, it is not necessary that the injured trader should show, in order to entitle himself to relief, that he has an exclusive property in the name by which his goods are distinguished on the market, for equity will restrain the

use of any imitative device by which one trader attempts to beguile the public into buying his goods as those of his rival.

3. The law governing the rights of rival traders is founded on honesty and designed to rebuke and suppress fraud; hence, if it appears that he who asks protection against the fraud of his rival, is himself defrauding others, no protection can be extended to him.

On application for an injunction.   Heard on bill and affidavits and answer and affidavits and depositions taken pursuant to an order of the court.

*Mr. Robert H. McCarter*, for the complainant.

*Mr. Abner Kalisch*, for the defendants.

VAN FLEET, V. C.

This is an application for an injunction to prevent the defendants from fraudulently competing in business with the complainant.   The complainant is a corporation and has succeeded to the business, business reputation and good-will of Amos H. Van Horn.   Mr. Van Horn is its president.   For more than thirty years prior to the complainant's organization, Mr. Van Horn had carried on business in Newark as a dealer in household goods, and had established a large and lucrative trade.   Among the articles which he sold for two or three years prior to the time when he transferred his business to the complainant, was a cooking stove or range, called " Portland," which was made for him alone and sold by the manufacturer to no other dealer in Newark.   In consequence of extensive advertising and its qualities, this stove became well and favorably known in the Newark market, and a large number were sold at a handsome profit. For the year preceding the commencement of this suit, the complainant sold over five hundred.   Until the defendants put their stove on the market, no dealer in Newark, except the complainant and its predecessor in its business, had, for some years, dealt in a cooking stove, known on the market, by the name " Portland."   The complainant and defendants are rivals in business. Their places of business are on the same side of the same street, .

with but one building intervening, the street number of the complainant being 73 and that of the defendants being 77. A few days before the bill in this case was filed, the defendants commenced selling, at their store, a cooking stove which they had caused to be named "Portland," and which is quite similar in appearance to the stove of the complainant, but which had been previously sold on the market as the "Columbian Dandy." The defendants undersold the complainant, and when they commenced the competition, of which the complainant complains, they advertised their stove, by hanging placards and signs in front of their store, containing these words: "Famous Portland"—"Famous Portland Range reduced—has no equal." They had previously hung out signs, in front of their store, with the number "73" on them. The complainant insists that they did this for the purpose of deceitfully luring purchasers, who were looking for its store, into theirs. The special protection for which the complainant asks is, that the defendants may be restrained from making any use of the name "Portland" which will enable them to palm off their stove on purchasers as the stove of the complainant.

The legal principles which must govern the decision of this case are well established and familiar. The law not only allows but encourages fair, open and honest competition, but while it demands that the markets shall be open and free to all dealers, and that each shall enjoy the utmost freedom in competing, by fair and honest means, with his rivals, it absolutely interdicts each from taking a fraudulent advantage of his rivals, by dealing under false colors and selling his goods as those of his rival, and thus cheating the public and defrauding his rival. In the words of Mr. Justice Knapp: Rivalry of that kind "is not fair competition; it is closer akin to piracy." *Miller Tobacco Manufactory* v. *Commerce, 16 Vr. 18, 24.* As declared by Lord Kingsdown in *Leather Cloth Co.* v. *American Leather Cloth Co., 11 H. L. Cas. 523, 538:* "The fundamental rule is, that one man has no right to put off his goods for sale as the goods of a rival trader, and he cannot therefore be allowed to use names, marks, letters or other *indicia,* by which he may induce pur-

Van Horn *v.* Coogan.

·chasers to believe that the goods he is selling are the same goods sold by a rival trader." This is, in substance, the rule laid down by Lord Langdale in *Perry* v. *Truefitt, 6 Beav. 66,* and which has been generally adopted by the courts as a correct exposition of the law.

But it is contended that a geographical name, like Portland, cannot be a trade-mark, nor be so used as to give the dealer, who first adopts it, an exclusive property in it. This, I think, may be conceded without impairing, in the slightest degree, the complainant's right to the protection it asks. For, as was said, in substance, by Lord Langdale in the case just cited, the question, in cases like this, is not whether the complainant has a property in the name by which his goods are distinguished in the market, but, on the contrary, the pertinent inquiry is, has the defendant a right to use the name by which the complainant's goods are known for the purposes of deception, and in order to attract to himself that custom which, without the improper use of such name, would have flowed to the complainant? And the answer to the inquiry is, that the defendant has no such right. The supreme court of the United States, in *Coats* v. *Merrick Thread Co., 149 U. S. 562, 566,* recently said, speaking by Mr. Justice Brown, that there can be no question as to the soundness of the proposition that, irrespective of the technical question of trademark, one trader has no right to dress up his goods in such manner as to deceive an intending purchaser, and induce him to believe he is buying the goods of a rival trader. " Rival manufacturers may lawfully compete for the patronage of the public in the price and quality of their goods, in the beauty and tastefulness of their enclosing packages, in the extent of their advertising, and in the employment of agents, but they have no right, by imitative devices, to beguile the public into buying their wares under the impression they are buying those of their rivals." Chief-Justice Fuller had in the prior case of *Lawrence Manufacturing Co.* v. *Tennessee Manufacturing Co., 138 U. S. 537, 549,* announced the same doctrine, and in stating the grounds upon which it rested, he cited with approval the views expressed by Mr. Justice Bradley in *Putnam Nail Co.* v. *Bennett, 43 Fed.*

*Rep. 800.* The complainant, in the case just mentioned, alleged, that it had been engaged, for some years, in making and selling bronzed horseshoe nails; that the bronzing of its nails constituted a trade-mark, and that the defendants had recently bronzed the nails which they sold, in imitation of the complainant's, and were, by this means, enabled to palm off their nails on the public as the nails of the complainant. The complainant also alleged, that purchasers had been deceived and misled into buying the nails of the defendants in the belief that they were those of the complainant. The defendants demurred, insisting that the complainant could not acquire a trade-mark by simply bronzing its nails. In overruling the demurrer, Judge Bradley said: "Whether this [bronzing nails] is in itself a good trade-mark or not, it is a style of goods adopted by the complainant, which the defendants have imitated for the purpose of deceiving, and have deceived the public thereby, and induced them to buy their goods as the goods of the complainant. This is a fraud. * * * The allegation that the complainant's peculiar style of goods is a trade-mark may be regarded as a matter of inducement to the charge of fraud. The latter is the substantial charge."

These authorities demonstrate, I think, that the complainant is not bound to show, as an indispensable prerequisite to its right to relief, an exclusive property in the name "Portland," but that its right to the protection it asks must be considered to be fully established if it satisfactorily appears that the defendants have made use of this name as an imitative device for the purposes of deception—to beguile the public into buying their stove under the belief that they were buying the stove of the complainant. That such was the purpose of the defendants is proved, I think, by their own acts. It is undisputed, that they changed the name of their stove from "Columbian Dandy" to the name by which the complainant's stove was known in the Newark market, and under which it had there achieved a renown, and that they then advertised their stove, by signs and placards, as the "Famous Portland Range reduced," meaning, obviously and unquestionably, that they were selling, at a reduced price, a range which had become famous in the Newark

market under the name "Portland." The truth, however, appears to be, that up until a few weeks before the commencement of this suit, the defendants had never sold a stove by the name of "Portland," and also, that when they first offered a stove for sale by that name, its name had just been changed, so that when they hung out placards, advertising their stove as the "Famous Portland Range," the fact was that their stove was wholly unknown by its new name. It was without reputation or fame and unknown. The only stove then on the market in Newark which was known by the name "Portland" was the stove of the complainant. These facts will bear but one interpretation. They show that the defendants meant to defraud the complainant, by beguiling the public into buying their stove under the belief that they were buying the stove of the complainant.

But the defendants set up another defence. They recriminate. They charge that whatever reputation the complainant's stove acquired on the market, has been established by falsehood and deception. They allege that the stove which the complainant calls "Portland," and sells under that name, is, in all respects, identical with a stove known as the "Canopy," and which has been on the Newark market for a long time, and is now sold by dealers in Newark for less money than the complainant sells its stove for. The charge, it will be perceived, is that the complainant is selling its stove under a false name. There can be no question that a complainant who seeks judicial protection in a case of this kind, must, to succeed, come into court with clean hands and a pure conscience, nor that it will be the duty of the court to refuse him protection against the fraud of his rival if it appears that he is himself committing a fraud on the public. No such thing as an exclusive privilege to defraud the public is known to the law, and no man can successfully assert a right to judicial protection for profits derived from a business carried on in such manner as to deceive and cheat the public. The law governing the rights of rival traders is founded in honesty and good sense. It is not intended to protect fraud but to rebuke and suppress it and to promote honesty and fair dealing. While the cases so declaring are numerous, only three will be cited.

*Fetridge* v. *Wells*, *4 Abb. 144*; *Wolfe* v. *Burke*, *56 N. Y. 115*; *Manhattan Medicine Co.* v. *Wood*, *108 U. S. 218*.

The branch of the defence now under consideration rests on these facts : That the complainant is engaged in selling a stove which was originally named "Canopy," but which, for some years past, the complainant and its predecessor in business have called "Portland" and sold under that name, while other dealers in Newark have sold, and are now selling, the same stove under its original name for less money than the complainant does. If this is assumed to be true, how does it show fraud or furnish evidence of falsehood or deception ? There is no law forbidding a manufacturer from changing the name of a stove made by him, provided the change is not made to be used as an imitative device by which one trader may sell his goods as those of his rival. The proof shows that the practice is quite general among stove manufacturers to make a stove for a single dealer in one market by a certain name, and to make the same stove, for another dealer in another market, by a different name. If it had been shown that there was a stove on the Newark market with an established reputation by the name of "Portland," superior to the stove called "Canopy," and that the complainant had been engaged in palming off the inferior stove under the name of the superior, the proof of deception would be sufficient to disentitle the complainant to relief. But there is no evidence of that kind. There is no stove now on the Newark market called "Portland," and has not been for years, except those offered for sale by the complainant and defendants. The Buckwalter Stove Company is the only manufacturer that makes the stove called "Canopy." It also manufactures the "Portland" sold by the complainant, and is under an obligation to the complainant not to make the "Portland" for any other dealer in Newark. The "Portland" and "Canopy" are not identical. They differ in material respects. The "Portland" is made with a duplex grate and the "Canopy" with a flat grate—the weight of the evidence shows that the former is better than the latter—the "Portland" is manufactured with a separate base, called a piano or portable base, on which it is set and may be lifted off, while the "Canopy" rests on feet

which are driven or pushed into clinches on its bottom; the " Portland" has a receiver or pan into which the ashes drop and the " Canopy " has not; the " Portland " is made with ventilated doors and " Canopy " with solid doors; and the " Portland " has a grate-shaker or agitator and the " Canopy " has not.   Some of the most important of these additions and improvements were made by the direction of the complainant.   Looking at them in their entirety, it is obvious, as I think, that although the " Portland " is, in its body, constructed after patterns made for the " Canopy," still that the two stoves differ so widely, in important respects, that their maker was fully justified in putting them on the market under different names, and that in doing so no wrong of any kind was committed.   In my judgment, nothing has been shown which disentitles the complainant to the relief it asks.   An injunction will be granted.