15 N.J. Super. 283 (1951)
83 A.2d 372
FERBER CORPORATION, PLAINTIFF,
v.
NORTHERN INDUSTRIAL PRODUCTS, INCORPORATED, AND ALL-RITE PEN, INCORPORATED, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided September 4, 1951.
*285 Messrs. Morrison, Lloyd & Griggs (Mr. Maxwell E. Sparrow, of the New York Bar, of counsel), attorneys for plaintiff.
Messrs. Schneider & Schneider (Mr. Oscar R. Wilensky, of counsel), attorneys for defendants.
GRIMSHAW, J.S.C.
The plaintiff corporation, which has been in business since 1947, is engaged in the manufacture of inexpensive ball-pointed pens with plastic barrels designed to resemble pencils. The first pen put on the market, in 1947, by the Ferber Company, had an opaque plastic barrel. The present product, first marketed in 1948, has a barrel of translucent plastic. The plaintiff does not have a patent covering either product.
The Ferber business is entirely wholesale. The pens are not sold under the Ferber name. Various names have been used. The one presently used is "Presdon," the name of a jobbing concern which was purchased by the Ferber Company. The name is stamped on a metal clip attached to the barrel of the pen. The volume of business done by the plaintiff corporation is large, and, oddly enough, has increased since this litigation started.
*286 The defendant, Northern Industrial Products, Inc., was organized in 1946. Originally it made ink cartridges and tips for ball-pointed pens manufactured by other concerns. In 1949 the Northern Company decided to manufacture complete pens and in 1950 put on the market a pen very similar in design to that manufactured by the plaintiff. The Northern pen is sold by the defendant All-Rite Pen, Inc., and has that name stamped on the barrel. It is the manufacture of this pen that plaintiff seeks to enjoin, upon the ground that the defendant is engaged in unfair competition.
In a suit to restrain unfair competition, where the infringement of a trade mark or trade name is not involved, fraud is the very gravamen of the action and must be pleaded and proved. National Grocery Co. v. National Stores Co., 95 N.J. Eq. 588 (Ch. 1924). Since the pen produced by the plaintiff is unpatented, there is no reason why defendant should not copy it, provided that in doing so, defendant does not seek to cheat the public and defraud the plaintiff. So long as defendant does not attempt to sell his goods as those of the plaintiff, he is not at fault. Mrs. G.B. Miller & Co. Tobacco Manufactory v. Commerce, 45 N.J.L. 18 (Sup. Ct. 1883); Amos H. Van Horn, Ltd., v. Coogan, 52 N.J. Eq. 380 (Ch. 1894), affirmed 52 N.J. Eq. 588 (E. & A. 1894).
It is conceded that all of the elements used in the construction of plaintiff's pen are readily available on the open market. Plaintiff claims, however, that it was the first manufacturer to use translucent plastic in the manufacture of pencil-shaped ball-pointed pens. It says, further, that as a result of excellence of workmanship and the promotional activities undertaken by the Ferber Company, the translucent pen has come to be associated in the public mind with the plaintiff company. Therefore, says the plaintiff, defendants' only reason for copying the Ferber pen must be a desire to mislead the public into thinking that the Northern pen was made by Ferber, thus enabling Northern to capitalize on the Ferber reputation.
*287 The record does not support this claim. The use of translucent plastic is not new. It has been used for years in the manufacture of pencils and conventional fountain pens. And there is convincing testimony in the record that other manufacturers preceded the plaintiff in using translucent plastic for pens of the type here in dispute.
But even if we assume that plaintiff was a pioneer in this respect, it cannot be contended that thereby plaintiff became entitled to the exclusive use of translucent plastic. Plaintiff had no patent and, presumably, it could not get one. If its contention is sound, it is entitled to a monopoly more valuable and extensive than any patent could give. Such is not the law. Mississippi Wire Glass Co. v. Continuous Glass Press Co., 79 N.J. Eq. 277 (Ch. 1911).
The Ferber name did not appear on any of its products. Its advertising was directed at jobbers and not the general public. So it is difficult to understand how the pen it produced could become associated in the public mind with the Ferber Company.
There is no proof that the defendant has been guilty of any fraud. It may have copied the Ferber pen but that it had the right to do. In other respects Northern has been careful to distinguish its product from that of the plaintiff by plainly marking the barrel of its pen with the name of All-Rite Pen, Inc., the distributor. And there is no evidence to support a conclusion that the public has been confused or misled.
Finally, it is charged that defendant's employees learned the construction details of plaintiff's pen as the result of a confidential relationship existing between the officers of the two corporations. The evidence fails to sustain the charge. But, assuming that originally a confidential relationship existed and defendant was under an implied obligation not to use plaintiff's product for its own purposes, that obligation ended when plaintiff made its product public. Carver v. Harr, 132 N.J. Eq. 207 (Ch. 1942).
Complaint dismissed.