21 N.J. Super. 311 (1952)
91 A.2d 173
SEAL-O-MATIC MACHINE MFG. CO., INC., A CORPORATION OF NEW JERSEY, PLAINTIFF,
v.
C & M ENGINEERING & MFG., INC., A CORPORATION OF NEW JERSEY, JOHN MAYER AND JEREMIAH CASEY, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided August 26, 1952.
*313 Messrs. Levenson & Levenson (Mr. Abe D. Levenson, appearing), Mr. Edward L. Cole (of counsel), attorneys for plaintiff.
Mr. Chester Mueller, attorney for defendants.
GRIMSHAW, J.S.C.
This action is concerned with the ownership of and right to manufacture an automatic machine for printing names and addresses on bank checks. The plaintiff corporation alleges that the design and manufacturing details of the machine constitute a trade secret which defendants have wrongfully appropriated to their own use. Defendants, on the other hand, claim as their own the property rights in the machine. An injunction against further manufacture and sale of the machine and an accounting of profits is sought by each party against the other.
*314 The plaintiff corporation was organized in 1947 by Rupert Wilson and Philip Klein, for the purpose of manufacturing and developing special machines for use in the printing business. Of an authorized capital of 100 shares, Wilson, who was also president of the company, holds 37 shares and Klein 37 shares. The defendant Mayer, whose services were engaged by the corporation when it was organized, was the engineer and production manager. He was given, in addition to his salary, 10 shares of stock, and was also made a vice-president and director. He later purchased 16 additional shares.
Wilson has been in the printing business for 50 years. During that period he designed and built various machines for use in that business. Defendant Mayer, who, prior to his association with the plaintiff, had had no experience in printing, is an expert tool and die maker.
The defendant Casey is engaged in the business of selling to banks ideas for improved service. His business is conducted through the medium of corporations. One of those corporations, ThriftiMatic Company, sells check imprinters. These machines are not new. Several companies were manufacturing them in 1949. None of them gave the performance which ThriftiMatic desired and, in December of 1949, Casey sent a representative to the plaintiff company with a view to having that concern undertake the job of building a new machine for ThriftiMatic which would incorporate the features desired by Casey. At the direction of Wilson, Mayer inspected the machine in the ThriftiMatic office and expressed the opinion that improvement of the machine would be easy. Plaintiff agreed to build the machine.
At a conference of the parties, Casey outlined the results desired. He also left with the plaintiff the machine then in use but which was not satisfactory. Work was started in April of 1949. It was done largely by Mayer, aided by suggestions from Wilson, Casey and others. The first model did not function properly. After further work had been done on it Casey ordered six machines. Three of the machines *315 were sent to California for exhibition at the bankers' convention, where they were advertised as a product of ThriftiMatic. One was placed in a bank in San Francisco and the remaining two machines were sent to Casey's office. For the six machines ThriftiMatic paid the plaintiff $6,000. Defects developed and Casey asked for changes, the cost of which was also paid by ThriftiMatic.
In February of 1950 the parties conferred with reference to a production contract. They could not agree on the terms of the contract and negotiations finally were broken off.
At about the same time, Casey had a meeting at his office with Mayer and another employee of the plaintiff, named Nelson. Nelson proposed that he and Mayer form a company, financed by Casey, for the manufacture of check imprinting machines for use by Casey's company. Casey testified that he refused to agree to such a proposition so long as Mayer and Nelson were employed by the Seal-O-Matic Company.
Mayer for some time had been dissatisfied with his working conditions. On February 24, 1950, he left the plaintiff's plant, presumably to go on a trip. He did not return. On February 27 he called Wilson to say that he was through and was resigning, and under date of February 28, 1950, Mayer sent a written resignation which was postmarked Washington, March 1, 1950.
On the evening of February 24, Mayer met with Casey at a conference in New York. They discussed the formation of a corporation to manufacture check imprinters and agreed upon the details of the corporate organization. That corporation, the defendant C & M Engineering & Mfg., Inc., was formed on February 27, 1950, and started operations immediately.
It is conceded that the imprinter built by Mayer at the plaintiff's plant, was used as a model for the one now manufactured by C & M. The latter machine contains improvements which make it function successfully, but basically both machines are the same. Neither machine embodies any *316 trade secrets or patents. The elements which they contain have been in use for a long period of time and are readily available on the open market. As one witness testified, a competent mechanic having at his command the material furnished to Mayer, could readily reproduce either one of the machines.
There is no doubt that Casey, upon learning of Mayer's withdrawal from the plaintiff concern, jumped at the chance of utilizing his talents and experience. Plaintiff charges that Mayer's resignation and subsequent association with Casey was the result of a conspiracy between the two. The charge is denied by both of them. They testified that their conference with reference to the new corporation did not occur until after Mayer had terminated his employment with Seal-O-Matic, and there is no proof to the contrary.
There was also a charge made that Mayer lured key employees from the plaintiff and engaged their services for the benefit of the defendant C & M Engineering & Mfg. Company. However, of this there is no competent proof.
Finally, we come to the question as to whether Mayer's conduct was such as to justify the relief sought by the plaintiff. It may be conceded that at the time of his association with Casey in the C & M Engineering & Mfg. Corporation Mayer was still a director and stockholder of the plaintiff company, although no longer employed by it. And in his new venture Mayer was manufacturing a check imprinter which would be in competition with any that Seal-O-Matic might offer for sale. On the other hand, Mayer used no part of Seal-O-Matic resources in the new venture. The business opportunity was one of which Seal-O-Matic could not take advantage. Negotiations between the plaintiff and ThriftiMatic had broken down and Casey was looking elsewhere for a new contact. Aside from suspicion, there is no proof that Mayer acted in bad faith. Under such circumstances Mayer cannot be charged with usurpation of a corporate business opportunity. Solimine v. Hollander, 128 N.J. Eq. 228 (Ch. 1940).
*317 Wilson complains of the loss of some $27,000 which he says was expended in the development of the check imprinter. He says, in effect, that it would be inequitable to permit defendants to have the benefits of the expenditures without contribution. There are several answers to this complaint. In the first place, Casey offered to advance an engineering fee and his offer was rejected. The price of the machines was set by Wilson. And, finally, there is nothing to prevent Wilson from proceeding with the development of the Seal-O-Matic machine and thus take full advantage of the development expenses.
In this connection there is another aspect of the case which deserves mention. While negotiations with ThriftiMatic were in progress, Wilson was also engaged in similar negotiations with another company. That concern turned down the machine built by Mayer. After Mayer left the employ of Seal-O-Matic, the Mayer machine was scrapped, and Wilson, with a new engineer, built an entirely different machine. Contracts for the production of this latter machine have been signed by a new corporation formed by Wilson and Klein for that purpose. Under such circumstances it is difficult to see how Wilson or Seal-O-Matic has been damaged.
In my opinion the plaintiff has failed to show that defendants were guilty of any wrongdoing or breach of faith of such a character as to justify a judgment for injunction and an accounting.
Similarly, the defendants have failed to show any invasion of their property rights which would call for remedial action. The machine in dispute was not patentable. As has been said, any competent mechanic could reproduce it without trouble. And even if we should assume that originally the construction details were secret, any right to have them protected was lost when the machine was made public. Ferber Corp. v. Northern Industrial Products, Inc., 15 N.J. Super. 283 (Ch. Div. 1951), affirmed 18 N.J. Super. 493 (App. Div. 1952).
The complaint and counterclaim will be dismissed without costs.