**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4041-21

SHARON IVANOVS,

       Plaintiff-Respondent/
Cross-Appellant,

v.

RAIMONDS IVANOVS,

       Defendant-Appellant/
Cross-Respondent.

_____

> Argued February 12, 2024 – Decided August 12, 2024
>
> Before Judges DeAlmeida, Berdote Byrne, and Bishop-Thompson.
>
> On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Warren County, Docket No. FM-21-0215-19.
>
> Patrick T. Collins argued the cause for appellant/cross-respondent (Skoloff & Wolfe, PC, attorneys; Patrick T. Collins, on the briefs).
>
> Brian M. Schwartz argued the cause for respondent/cross-appellant (Szaferman, Lakind, Blumstein & Blader, PC, attorneys; Brian M. Schwartz

of counsel and on the briefs; Brian G. Paul, on the briefs).

PER CURIAM

In these cross-appeals, defendant challenges certain portions of the Family Part's June 14, 2022 order entered after trial, regarding the percentage of equitable distribution of various properties, numerous bank and retirement accounts, and the calculation of alimony. He also appeals from a post-judgment order dated August 24, 2022 denying reconsideration of equitable distribution.

Upon dissolving the marriage, the court ordered defendant pay plaintiff $60,000 a year for ten years in limited durational alimony, and equitably distributed three marital properties, ten other properties, and eight of thirteen retirement and bank accounts. It denied counsel fees to both parties. Defendant claims the court erred: 1) in equitably distributing to plaintiff a percentage interest in an asset he acquired pre-maritally, the "17 Bennington Drive" property; 2) in calculating plaintiff's share of the that property; 3) in equitably distributing proceeds from the sale of "110 Mill Street"; and 4) in calculating alimony.

Plaintiff cross-appeals, contending the trial court erred in not awarding her counsel fees, and requests this court reverse the trial court's denial of her

2

request for counsel fees and remand the matter for a more comprehensive analysis of the Rule 5:3-5(c) and RPC 1.5 factors.

After reviewing the record in the light of the arguments advanced by the parties, and applying the prevailing legal standards to the facts, we affirm in part, reverse in part, and remand for the reasons that follow.

I.

We glean the following facts from the trial record. Plaintiff Sharon Ivanovs and defendant Raimonds Ivanovs were married on October 1, 2000 and did not have children. Plaintiff filed a complaint for divorce on September 24, 2018. Defendant counterclaimed and alleged the property, assets, and debt should be equitably distributed pursuant to the terms of their September 30, 2000 pre-marital agreement. After the trial court found the September 30, 2000 pre-marital agreement invalid and unenforceable, it held a five-day trial. The court entered its final judgment and written decision on June 14, 2022.

Regarding earning capacity and spousal support, the parties testified at length to their pre-marital and marital lifestyles and employment record. Prior to the marriage, plaintiff worked for a temporary and permanent placement agency from 1995 until 1999. Three months after she left the agency, she began assisting defendant at his restaurant but was not paid for this work. During the

marriage, plaintiff worked part-time as a bookkeeper from 2000 to the summer of 2005, earning $12-$13 per hour. Afterwards, plaintiff worked full-time as an accounting assistant from 2005 until 2014, earning $18.79 per hour. After leaving that employment, plaintiff "assisted in the day-to-day operations of the properties [the couple] owned for rental income or vacations." Her role included preparing the homes for use to defendant's standards, which she claimed required much effort and frequent travel from New Jersey to Delaware. She would travel to the properties to clean, paint, remove carpets, fix a leak, or handle eviction proceedings.

Defendant graduated from pharmacy school at St. John's University and began working as a pharmacist after obtaining his license. In 1988, defendant became a podiatrist and eventually took a position as Chief of Podiatry at Woodhull Hospital in Brooklyn, New York in 1994. He remained in that role until 2008 when the hospital was acquired by New York University and then became an Associate Clinical professor. He opened a private practice located at 110 Mill Street, where he worked three days a week until he sold the practice in 2016. He immediately began working at McKinney Hospital in Brooklyn, New York, where he remained employed at the time of trial. Prior to the marriage, defendant purchased a restaurant. He maintained the restaurant while working

4

as a doctor but closed it in 2012. Defendant worked thirty-two hours per week at Woodhull Hospital and sixteen hours per week at McKinney Hospital at the time of trial. His net income was $3,000 per week. At the time of trial, plaintiff was fifty-three and defendant was sixty-two years of age.

The court noted the couple "maintained an upper-middle-class lifestyle during the marriage, residing in a four-bedroom home and owning a vacation home. The parties took multiple vacations a year together and often attended Broadway shows."

After she filed for divorce, plaintiff stopped receiving any direct support from defendant and became responsible for her own personal expenses. She obtained loans from her mother so she could "survive" but never sought pendente lite support because of the pendency of court's decision regarding the validity of the pre-marital agreement. Defendant argued the couple "retained their own bank accounts with [p]laintiff paying the cost of cable, telephone, and groceries and [d]efendant carrying the costs of the residences."

At trial, plaintiff requested retroactive payment of pendente lite support dating back to October 1, 2018, four years before the trial began. The court determined that although it was unexpected litigation would take four years, plaintiff had the ability to seek support at any time after she filed the complaint

A-4041-21

and "had a duty of due diligence in seeking support when needed." Additionally, it found: 1) she was represented by counsel during the whole process and likely aware of her ability to make the request; 2) it would be inequitable to award it; and 3) defendant provided her with some monetary support during the proceedings. The court determined plaintiff was willfully unemployed and had the ability to seek employment during the divorce proceedings instead of "requesting loans from her mother."

Prior to and during the course of the marriage, the parties acquired multiple properties. As the court noted, the main dispute in the divorce proceeding involved which of the numerous contested properties were marital property and which were pre-marital property. The court ordered the parties "sell and divide the proceeds equally of the three marital properties": Roxbury, New Jersey, Hillsborough, Delaware, and Blairstown, New Jersey. The parties do not challenge the equitable distribution of these properties on appeal.

However, with respect to the remaining properties, defendant claimed they were pre-marital because he either purchased them prior to the marriage or he utilized pre-marital funds to purchase them during the marriage, such as funds from an inheritance or the proceeds of the sale of a premarital property. As a result of the court invalidating the pre-nuptial agreement, it analyzed which, if

6

any, of the properties "were so intertwined with the marital property that they [were] now distributable."

The court found that because "of the length of the marriage, the income disparities amongst the parties, and the role [plaintiff] played in maintaining the properties the couple owned, that it [was] equitable to award her proceeds from the sale of homes acquired post marriage or a percentage of the value of the home upon appraisal." Contrary to defendant's arguments, the court determined "[b]y selling the homes during the marriage and using the proceeds to purchase more homes, the assets became significantly comingled." Further, plaintiff "was able to prove at trial that her work on the homes played a substantial role in keeping the rental properties habitable and benefited [defendant]," even though she was unable to specify how she increased the value of the home.

First, the court ordered the following five properties and proceeds from any sale were to remain solely in defendant's possession: two properties in Dover, New Jersey, one property in Allamuchy, New Jersey, and one property in Wharton, New Jersey. Neither party disputes the court's rulings as they relate to these five properties on appeal. Second, it found it appropriate to divide the proceeds of the remaining property amongst the parties, ordering as follows:

> a. 17 Bennington Dr, Flanders NJ- Plaintiff is entitled to 40% of the proceeds of the sale of the home. Within

7

ten days (10) of this order [d]efendant is to reimburse [p]laintiff $52,500;

b. 119 Wagonwheel, Sparta NJ- Plaintiff is entitled to a 50% share in this property. Defendant may either retain the property and obtain an appraiser to determine the fair market value [or] the property must be listed to sell within thirty (30) days and [plaintiff] is entitled to 50% of the net proceeds;

c. 13 Lee Avenue, Jefferson, NJ- [Plaintiff] is entitled to 50% of the net proceeds within ten (10) days;

d. 21 Ledgewood Ave, Jefferson, NJ- Plaintiff is entitled to a 50% share in this property. Defendant may either retain the property and obtain an appraiser to determine the fair market value or the property must be listed to sell within thirty (30) days and [plaintiff] is entitled to 50% of the net proceeds;

e. 27-29 Second St, Wharton, NJ- [Plaintiff] is entitled to 50% of the proceeds from the sale of this property totaling $126,000 within ten (10) days;

f. 110 Mill St, Hackettstown NJ- [Plaintiff] is entitled to 50% of the proceeds from the sale of this property totaling $113,722.68 within ten (10) days;

g. 300 Eighth Ave Apt. 4G Brooklyn, NY- Plaintiff is entitled to 50% of the net proceeds of the sale of this home, [d]efendant must provide said funds within ten (10) days;

h. 36103 Bonefish Ct, Lewes DE- Plaintiff is entitled to a 40% share in this property. Defendant may either retain the property and obtain an appraiser to determine the fair market value or the property must be listed to sell within [sic]

8

i. 300 [Eighth Ave, Apt 1E. Brooklyn, NY]- Plaintiff is entitled to a 20% share in the property due to her assistance in renovating the apartment as well as obtaining purchase approval from the co-op board.

j. 30643 Dupont Blvd, Dagsboro DE- Plaintiff is entitled to a 20% share in this property. Defendant may either retain the property and obtain an appraiser to determine the fair market value or the property must be listed to sell within [sic]

Upon their marriage, the parties lived at 17 Bennington Drive, Flanders, New Jersey. It was a home purchased by defendant on June 12, 2000 -- four months before the parties married. Plaintiff testified they took their time moving, but they moved in one or two months before they married. Plaintiff's name was not on the deed but both parties were listed as grantors when it was sold. Prior to selling the property, the parties moved to another residence and maintained 17 Bennington Drive as a rental property. The court found the home distributable because the parties used the residence as their marital home, and because plaintiff put a considerable amount of work into the property. Defendant was ordered to reimburse plaintiff for half the proceeds: $175,000.

Defendant purchased the property at 110 Mill Street, Hackettstown, New Jersey on October 25, 2006, for $475,000. The property was first used to house one of defendant's medical offices. The court reviewed the parties' tax returns

and found "they made considerable improvements on this property." Defendant and his sister testified defendant used $75,000 gifted to him by his father for the downpayment of the property. Defendant also testified that after he sold the home in April 2018, he netted a profit of $227,445.37 and gave his sister most of the proceeds because he did not agree with the uneven distribution in his parents' will. The court found defendant failed to provide sufficient proof he used his inheritance or gift for the down payment and determined the property was distributable because of the considerable role plaintiff had in maintaining and repairing the property. Defendant was ordered to provide plaintiff half the proceeds: $113,722.68. However, defendant testified he only received $179,000 in total after closing costs.

The court also equitably divided bank and retirement accounts according to its analysis of where the amounts in each account originated. Defendant argued the multiple bank and retirement accounts were not subject to equitable distribution. The court divided those assets as follows:

> a. Fulton Bank-Balance $16,111 [plaintiff] is entitled to 50% of this account;
>
> b. Picatinny FCU-Balance $7,375 remains solely in [defendant's] possession;
>
> c. Latvian FCU-Balance $1,943 remains solely in [defendant's] possession;

10

d. Dime Bank 4729 Balance $192,266 [plaintiff] is entitled to 40% equaling $76,906.40;

e. Dime Bank 2711 Balance $553,772 [plaintiff] is entitled to $250,234.80;

f. Stocks-to be divided equally amongst the parties;

g. Medical Associates of Woodhill Retirement- $127,016 is exempt, the rest is equally distributable;

h. Wells Fargo Account- remains solely in [defendant's] possession;

i. Janus Account-remains solely in [plaintiff's] possession;

j. TIAA and City of New York Retirement Accounts- distributable up to the time complaint was filed. Will be divided by QDRO with both parties sharing the cost;

k. VOYA AND ALLIANZ- Due to [defendant's] failure to provide a detailed account history these accounts were distributable up to the time complaint was filed. Will be divided by QDRO with both parties sharing the cost;

l. Oasis 401k- equally distributable;

m. TD Ameritrade - $51,137 is considered pre-marital, the rest is distributable equally;

The court made credibility findings in aid of its determinations. It found plaintiff's "valuation of bank accounts and her CIS [were] not fully credible as the estimations appear to be excessively high." It further found the extent to

11

which she claimed she worked on the properties was not fully credible. The court questioned her claims and inconsistencies in her testimony. It noted plaintiff

> stated that she did not expect the divorce proceedings to go on this long, and that Covid delayed the proceedings as well. [She] failed to explain why she did not seek employment during these proceedings or even pendente lite support instead relying on loans from her mother. She stated a need to have a 4 bedroom home post-divorce and detailed [in] her Case Information Statement [(CIS)] and what money she will need to establish said home. [Plaintiff] desires all aspects of the home to be brand new and seeks a new truck with monetary support to pay for the maintenance of the vehicle. She also listed a mental health professional on her CIS but has yet to obtain one. She acknowledged that there were errors on her CIS but did not attempt to rectify them . . . . She allege[d] there [were] cars that were sold during the proceedings without her consent, that a $20,000 check was written by [defendant] to himself[,] and that the silver bar that was located in the safe is now missing.

> [Plaintiff] stated that in the four years from leaving [her employment] and the divorce proceedings she did not obtain money from her mother but fails to explain how she paid her marital bills. [She] later admitted to receiving $14,000 in 2012 from her mother. Most of [plaintiff's] testimony in the plenary hearing entailed detailing to the court all the work and improvements she has done on the properties but later admitted that the work did not increase the value of the home and that [d]efendant had a team of contractors that he would also use to assist. While the court acknowledges [plaintiff's] role in maintaining the

property it does not find the extent to which she claims to have worked on the homes fully credible.

With respect to defendant, the court found his extremely busy schedule concerning his podiatry work and restaurant led it to believe plaintiff "did play a key role in keeping the investment properties running" contrary to defendant's testimony. It also found defendant's testimony regarding the rental income lacked credibility. Specifically, he "waffled between stating the properties were self-supporting and stating they were operating at a loss." Additionally, it noted defendant

> failed to fill out a CIS with any joint lifestyle information. By failing to provide any listing of vehicles, or collectibles the court [had to] accept [plaintiff's] valuations. [Defendant] notably failed to seek approval for the sale of the multiple marital cars and property. [Defendant] claim[ed] he did seek approval as he believed the property was premarital and that he gave $179,000 back to his parent's estate due to disparities.

On June 21, 2022, defendant filed a notice of motion for reconsideration and a motion for a stay pending appeal of the trial court's June 14 final judgment. On July 20, 2022, plaintiff filed a cross-motion for reconsideration and clarification of the trial court's June 14 final judgment. On August 24, 2022, the court entered an order and written statement of reasons denying defendant's: 1) request for a stay of the final judgment pertaining to the equitable distribution

of non-jointly titled real estate and the proceeds; and 2) motion for reconsideration and vacation of paragraph 4(a) and 4(f) (relating to the equitable distribution of 17 Bennington Drive and 110 Mill Street) of the final judgment. It granted "[d]efendant's request to receive 100% credit of the carrying costs of the property . . . at 7 Conrad Court . . . pending its sale and 50% of the carrying costs of the property . . . at 24803 Rivers Edge [Road], Millsboro Delaware pending its sale against his alimony obligation."  The court granted a majority of plaintiff's requests except her request for contribution of counsel fees and alimony payments retroactive to October 15, 2021, in the amount of $10,000.  It also further clarified certain discrepancies found in its original judgment.  It determined, among other things, "the equity of 24-26 Main Street which was not included in the final judgment" would allocate solely to defendant; clarified the amount of reimbursement owed to plaintiff related to 17 Bennington Drive was $175,000; and removed paragraphs 4e and 4h from the judgment.

This appeal followed.

## II.

We begin by acknowledging our review of Family Part orders is limited. Cesare v. Cesare, 154 N.J. 394, 411 (1998).  "We review the Family Part judge's findings in accordance with a deferential standard of review, recognizing the

14

court's 'special jurisdiction and expertise in family matters.'" Thieme v. Aucoin-Thieme, 227 N.J. 269, 282-83 (2016) (quoting Cesare, 154 N.J. at 413). "Thus, 'findings by the trial court are binding on appeal when supported by adequate, substantial, credible evidence,'" id. at 283 (quoting Cesare, 154 N.J. at 411-12), and it is "[o]nly when the trial court's conclusions are so 'clearly mistaken' or 'wide of the mark' should [we] intervene and make [our] own findings to ensure that there is not a denial of justice," N.J. Div. of Youth & Fam. Servs. v. E.P., 196 N.J. 88, 104 (2008) (quoting N.J. Div. of Youth & Fam. Servs. v. G.L., 191 N.J. 596, 605 (2007)). We do not, however, owe any deference to the court's "interpretation of the law . . . ." Thieme, 227 N.J. at 283 (quoting D.W. v. R.W., 212 N.J. 232, 245 (2012)).

We afford Family Part judges broad discretion in setting alimony and equitable distribution awards. Bermeo v. Bermeo, 457 N.J. Super. 77, 83-84 (App. Div. 2018) (quoting Martindell v. Martindell, 21 N.J. 341, 355 (1956)); Slutsky v. Slutsky, 451 N.J. Super. 332, 355 (App. Div. 2017) (quoting Clark v. Clark, 429 N.J. Super. 61, 71-72 (App. Div. 2012)). We may vacate the award if the trial court's "'findings were mistaken[,] or . . . the determination could not reasonably have been reached on sufficient credible evidence in the record[,]' or 'failed to consider all of the controlling legal principles.'" M.G. v. S.M., 457

15

N.J. Super. 286, 294 (App. Div. 2018) (alterations and omissions in original) (quoting Gonzalez-Posse v. Ricciardulli, 410 N.J. Super. 340, 354 (App. Div. 2009)). If the trial "court ignores applicable standards, we are compelled to reverse and remand for further proceedings." Gotlib v. Gotlib, 399 N.J. Super. 295, 309 (App. Div. 2008); see Boardman v. Boardman, 314 N.J. Super. 340, 345 (App. Div. 1998). Accordingly, "we will affirm an equitable distribution as long as the trial court could reasonably have reached its result from the evidence presented, and the award is not distorted by legal or factual mistake." La Sala v. La Sala, 335 N.J. Super. 1, 6 (App. Div. 2000) (citing Perkins v. Perkins, 159 N.J. Super. 243, 247-48 (App. Div. 1978)). The same is true for alimony. See Bermeo, 457 N.J. Super. at 84 (quoting Rolnick v. Rolnick, 262 N.J. Super. 343, 360 (App. Div. 1993)).

A. Alimony.

Defendant argues the court failed to address the factual basis or legal reasoning it relied upon in arriving at the alimony amount it ordered, including not referring to the statutory factors a trial court is required to consider in determining alimony. He maintains the "failure renders appellate review impossible and requires a remand for the issuance of such findings and conclusions," in accordance with Rule 1:7-4.

16

Plaintiff contends the "court's decision sufficiently and implicitly considered the relevant statutory factors for determining alimony." She maintains the written decision and record provides ample evidence that the court evaluated the relevant factors. Plaintiff relies on State v. Maisonet, 245 N.J. 552, 560 (2021), to assert we may affirm the trial court's decision because the findings can be reasonably inferred from the record and underscores each instance the trial court referred to facts in its decision that align with the alimony statutory factors set forth in N.J.S.A. 2A:34-23(b).

A family court may order alimony "as the circumstances of the parties and the nature of the case shall render fit, reasonable and just . . . ." N.J.S.A. 2A:34-23. Alimony is awarded to the supported spouse to provide him or her "a level of support and standard of living generally commensurate with the quality of economic life that existed during the marriage." S.W. v. G.M., 462 N.J. Super. 522, 531 (App. Div. 2020) (quoting Quinn v. Quinn, 225 N.J. 34, 48 (2016)). However, neither party has a greater entitlement to the marital lifestyle. N.J.S.A. 2A:34-23(b)(4).

Alimony awards are "governed by distinct, objective standards defined by the Legislature in N.J.S.A. 2A:34-23(b)." Gnall v. Gnall, 222 N.J. 414, 429 (2015). The court must consider the following statutory factors:

(1) The actual need and ability of the parties to pay;

(2) The duration of the marriage or civil union;

(3) The age, physical and emotional health of the parties;

(4) The standard of living established in the marriage or civil union and the likelihood that each party can maintain a reasonably comparable standard of living;

(5) The earning capacities, educational levels, vocational skills, and employability of the parties;

(6) The length of absence from the job market of the party seeking maintenance;

(7) The parental responsibilities for the children;

(8) The time and expense necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment, the availability of the training and employment, and the opportunity for future acquisitions of capital assets and income;

(9) The history of the financial or non-financial contributions to the marriage or civil union by each party including contributions to the care and education of the children and interruption of personal careers or educational opportunities;

(10) The equitable distribution of property ordered and any payouts on equitable distribution, directly or indirectly, out of current income, to the extent this consideration is reasonable, just and fair;

A-4041-21

(11) The income available to either party through investment of any assets held by that party;

(12) The tax treatment and consequences to both parties of any alimony award, including the designation of all or a portion of the payment as a non-taxable payment;

(13) The nature, amount, and length of pendente lite support paid, if any; and

(14) Any other factors which the court may deem relevant.

In each case where the court is asked to make an award of alimony, the court shall consider and assess evidence with respect to all relevant statutory factors. If the court determines that certain factors are more or less relevant than others, the court shall make specific written findings of fact and conclusions of law on the reasons why the court reached that conclusion. No factor shall be elevated in importance over any other factor unless the court finds otherwise, in which case the court shall make specific written findings of fact and conclusions of law in that regard.

[N.J.S.A. 2A:34-23(b).]

The court must "make specific findings on the evidence" regarding the statutory factors relevant to the particular type of alimony award. N.J.S.A. 2A:34-23(c). An alimony award that neglects any of the enumerated thirteen factors cannot stand. Gnall, 222 N.J. at 435.

Although the record contains findings the court utilized in its equitable distribution analysis pursuant to N.J.S.A. 2A:34-23.1, the court did not

19

expressly make specific findings regarding the statutory factors relevant to the particular alimony award pursuant to N.J.S.A. 2A:34-23(b). Gnall, 222 N.J. at 429-32.

Rule 1:7-4(a) requires:

> The court shall, by an opinion or memorandum decision, either written or oral, find the facts and state its conclusions of law thereon in all actions tried without a jury, on every motion decided by a written order that is appealable as of right, and also as required by R. 3:29. The court shall thereupon enter or direct the entry of the appropriate judgment.

A trial court's failure to make explicit findings and clear statements of reasoning "constitutes a disservice to the litigants, the attorneys, and the appellate court." Gnall, 222 NJ. at 428 (quoting Curtis v. Finneran, 83 N.J. 563, 569-70 (1980)). In its written opinion, the trial court did not consider or make any specific findings regarding any of the factors set forth in N.J.S.A. 2A:34-23(b). In fact, the record is silent on any analysis conducted pursuant to N.J.S.A. 2A:34-23(b) to explain how the court arrived at its $60,000 alimony determination, requiring our remand of the issue of alimony.

B. Equitable Distribution of Assets.

Marriage is a shared enterprise and, as a result, when a marriage is dissolved, the assets acquired during the marriage should be fairly divided by

20

the parties. Rothman v. Rothman, 65 N.J. 219, 229 (1974). The court is required to conduct a three-part analysis when determining whether to distribute an asset. Id. at 232. First, the court must identify which assets, existing at the time the complaint is filed, qualify as marital assets. Of those marital assets, the court must then determine the value of each particular asset, and finally decide how much to equitably allocate to the parties, consistent with N.J.S.A. 2A:34-23.1. Elrom v. Elrom, 439 N.J. Super. 424, 444 (App. Div. 2015) (quoting Rothman, 65 N.J. at 232); see Barr v. Barr, 418 N.J. Super. 18, 33 (App. Div. 2011). The term "equitable" does not necessitate that the parties receive equal shares; rather, the court provides the parties with a fair division achieved by applying the factors set forth in N.J.S.A. 2A:34-23.1. Accordingly, the court must consider, but is not limited to, the sixteen statutory factors set forth in N.J.S.A. 2A:34-23.1. Carr v. Carr, 120 N.J. 336, 348 (1990); see Sauro v. Sauro, 425 N.J. Super. 555, 576 (App. Div. 2012). These factors include:

> a) The duration of the marriage or civil union;
>
> b) The age and physical and emotional health of the parties;
>
> c) The income or property brought to the marriage or civil union by each party;
>
> d) The standard of living established during the marriage or civil union;

e) Any written agreement made by the parties before or during the marriage or civil union concerning an arrangement of property distribution;

f) The economic circumstances of each party at the time the division of property becomes effective;

g) The income and earning capacity of each party, including educational background, training, employment skills, work experience, length of absence from the job market, custodial responsibilities for children, and the time and expense necessary to acquire sufficient education or training to enable the party to become self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage or civil union;

h) The contribution by each party to the education, training or earning power of the other;

i) The contribution of each party to the acquisition, dissipation, preservation, depreciation or appreciation in the amount or value of the marital property, or the property acquired during the civil union as well as the contribution of a party as a homemaker;

j) The tax consequences of the proposed distribution to each party;

k) The present value of the property;

l) The need of a parent who has physical custody of a child to own or occupy the marital residence or residence shared by the partners in a civil union couple and to use or own the household effects;

m) The debts and liabilities of the parties;

A-4041-21

n) The need for creation, now or in the future, of a trust fund to secure reasonably foreseeable medical or educational costs for a spouse, partner in a civil union couple or children;

o) The extent to which a party deferred achieving their career goals; and

p) Any other factors which the court may deem relevant.

[N.J.S.A. 2A:34-23.1.]

The court may not simply mechanically divide the marital assets; it must weigh the unique circumstances of each case. Elrom, 439 N.J. Super. at 444 (quoting Stout v. Stout, 155 N.J. Super. 196, 205 (App. Div. 1977)).

When a party appeals the classification of an asset as a marital asset, we consider whether the trial court's decision was supported by sufficient credible evidence in the record. Rothman, 65 N.J. at 232-33.

1. 17 Bennington Drive.

If a party contends that an asset is exempt from equitable distribution, the burden of proof lies with the challenging party. Pacifico v. Pacifico, 190 N.J. 258, 269 (2007). Defendant argues the property was purchased before the marriage, plaintiff's name was not on the deed, and there was no testimony as to the mortgage debt or what the net proceeds of the sale were. He surmises the

reason her name was listed as a grantor on the deed to purchasers at the time of sale was "presumably to satisfy the purchaser's title insurer's requirements, as defendant had married plaintiff subsequent to the purchase." He also claims he referenced the property during litigation only to establish that a portion of the proceeds was used to purchase the property at 21 Ledgewood Drive, and the latter property should be exempt from equitable distribution as a result. To that end, defendant argues the liquidated funds of a home sold fifteen years prior to the filing of a divorce complaint are not subject to distribution. We agree.

The trial court originally ordered plaintiff was entitled to forty percent of the proceeds of the sale of the home, in the amount of $52,500, but did not provide the total amount of net proceeds, so it is unclear how the court arrived at that amount. The court subsequently explained in its written decision that it determined plaintiff was entitled to $175,000, which is half of what the court stated the home previously sold for -- $350,000. In its clarification and subsequent post-judgment order, the court ordered plaintiff was entitled to $175,000 without acknowledging the error or explaining how it came to the clarification. The record is clear that the home was purchased for $350,000, but upon its sale the parties received $455,000 in gross proceeds.

24

An asset's value is generally determined as of the date of filing a complaint. DiPietro v. DiPietro, 193 N.J. Super. 533, 538 (App. Div. 1984). Generally, there is no cognizable claim for an asset sold during the marriage and prior to the filing of a complaint for divorce because it is assumed the cash from that asset was utilized during the marriage or is otherwise maintained as a liquid asset in an account subject to equitable distribution. See Pascarella v. Pascarella, 165 N.J. Super. 558, 563-64 (App. Div. 1979). Because the asset did not exist at the time of the filing of the complaint and was not liquidated in anticipation of the divorce proceedings, it was error for the trial court to order its equitable distribution. Testimony regarding this property was introduced only to trace the pre-marital monies to the purchase of another property that the parties did own at the time of the filing of the divorce complaint. 17 Bennington Drive was not subject to equitable distribution because it had been liquidated and neither party owned the asset at the time the complaint was filed. The distribution of the proceeds from the sale of 17 Bennington Drive is vacated.

2. 110 Mill Street.

Defendant argues the court also erred in finding the 110 Mill Street property was distributable given he used his inheritance to pay the down payment and he gave the proceeds to his sister. He contends he sold the property

and gave the proceeds to his sister with the understanding the pre-marital agreement was enforceable. Additionally, only his name was on the title and the deposit was funded by his inheritance.

Plaintiff argues defendant failed to meet his burden of proving the property was exempt by sufficient credible evidence. Plaintiff reiterates she "made significant contributions to the property, actively participating in preparing the property for use as a second office, including painting the interior, clearing out and destroying records left by a previous tenant, and assisting with flood damage repairs," and the improvements are evidenced by their tax returns. Plaintiff contends defendant's transfer of the sale proceeds six months before plaintiff filed the divorce complaint amounted to dissipation.

As previously stated, defendant bears the burden to prove the property's immunity from distribution. Pacifico, 190 N.J. at 269. Defendant failed to demonstrate the inheritance was used to purchase the property and, as such, failed to meet his burden. However, regarding the tax assessment, there is no evidence in the record as to why the trial court awarded plaintiff one half of the sales proceeds without considering the tax assessment. The distribution of 110 Mill Street is vacated, and the asset is remanded for calculation of the amount due to plaintiff after the tax assessment is considered.

26

3.  Other Property (Not Raised Below).

Defendant argues the trial court's decision to equitably distribute certain property evenly failed to consider defendant's contribution of premarital assets to the acquisition. Specifically, he contends the trial court made no reference to N.J.S.A. 2A:34-23.1(c), "[t]he income or property brought to the marriage or civil union by each party," or N.J.S.A. 2A:34-23.1(i), "[t]he contribution of each party to the acquisition, dissipation, preservation, depreciation or appreciation in the amount or value of the marital property, or the property acquired during the civil union as well as the contribution of a party as a homemaker."

When a party appeals the manner of allocation, we review for abuse of discretion. See M.G., 457 N.J. Super. at 294. The manner in which the trial court considered the distribution of the assets was well within the court's discretion and we discern no basis for our interference. The court considered and entered findings pertaining to each of the statutory factors listed at N.J.S.A. 2A:34-23.1. It weighed and balanced the circumstances surrounding the parties and the individual property. See Stout, 155 N.J. Super. at 205. The court and the parties do not dispute defendant's income contribution, that he was the primary earner, purchased and sold properties, hired contractors in renovation projects, and maintained some properties as rental units or places of business.

27

In balancing the factors, the court reasonably determined plaintiff should receive fifty percent distribution in the properties where it found she put forth significant work.

C. Award of Counsel Fees.

The decision to award counsel fees is within "the sound discretion of the trial court." Bisbing v. Bisbing, 468 N.J. Super. 112, 121 (App. Div. 2021). The trial court's decision in that regard is therefore evaluated under an abuse of discretion standard. Strahan v. Strahan, 402 N.J. Super. 298, 317 (App. Div. 2008). We will only disturb the trial court's decision to award counsel fees on the rarest of occasions and only where the abuse of discretion is clear. Ibid. "An abuse of discretion occurs when a trial court makes 'findings inconsistent with or unsupported by competent evidence,' utilizes 'irrelevant or inappropriate factors,' or 'fail[s] to consider controlling legal principles.'" Steele v. Steele, 467 N.J. Super. 414, 444 (App. Div. 2021) (alteration in original) (quoting Elrom, 439 N.J. Super. at 434). "An abuse of discretion also arises when 'the discretionary act was not premised upon consideration of all relevant factors, was based upon consideration of irrelevant or inappropriate factors, or amounts to a clear error in judgment.'" Moraes v. Wesler, 439 N.J. Super. 375, 378 (App.

28

Div. 2015) (quoting Masone v. Levine, 382 N.J. Super. 181, 193 (App. Div. 2005)).

A party in a family action may move to recover counsel fees so long as that party supports its application with "an affidavit of services addressing the factors enumerated by RPC 1.5(a). . . . [and] a recitation of other factors pertinent in the evaluation of the services rendered . . . ." R. 4:42-9(b). "In a family action a fee allowance both pendente lite and on final determination may be made pursuant to [Rule] 5:3-5(c)." R. 4:42-9(a)(1). Furthermore, the trial court, in exercising its discretion, must consider the factors enumerated in Rule 5:3-5(c). N.J.S.A. 2A:34-23; Mani v. Mani, 183 N.J. 70, 93-95 (2005). Rule 5:3-5(c) provides:

> In determining the amount of the fee award, the court should consider, in addition to the information required to be submitted pursuant to R. 4:42-9, the following factors: (1) the financial circumstances of the parties; (2) the ability of the parties to pay their own fees or to contribute to the fees of the other party; (3) the reasonableness and good faith of the positions advanced by the parties both during and prior to trial; (4) the extent of the fees incurred by both parties; (5) any fees previously awarded; (6) the amount of fees previously paid to counsel by each party; (7) the results obtained; (8) the degree to which fees were incurred to enforce existing orders or to compel discovery; and (9) any other factor bearing on the fairness of an award.
>
> [R. 5:3-5(c).]

A trial court abuses discretion when it fails to consider the factors, make required findings, or put forth its conclusions.  Saffos v. Avaya Inc., 419 N.J. Super. 244, 270-71 (App. Div. 2011); R. 1:7-4(a).  The economic position of the parties will be largely irrelevant where a party acts in bad faith.  Yueh v. Yueh, 329 N.J. Super. 447, 461 (App. Div. 2000) (quoting Kelly v. Kelly, 262 N.J. Super. 303, 307 (Ch. Div. 1992)).

Plaintiff asserts the trial court abused its discretion in failing to award counsel fees after it "expressly" found defendant was in a better position financially to pay counsel fees.  She contends the court failed to:  1) consider the parties' individual net worth and assets in its determination of their financial circumstances, including the parties' financial disparity; 2) determine "defendant's bad faith in pursuing relief that had no reasonable basis in fact or law" and 3) make sufficient findings in violation of Rule 1:7-4 because it made limited findings on the factors pursuant to Rule 5:3-5(c) and made no findings regarding RPC 1.5 factors.  Plaintiff maintains the court solely focused on plaintiff's future award of substantial monetary funds in analyzing the parties' financial circumstances, "while ignoring the significant disparity in their incomes, earning abilities, net worth, and assets."

Lastly, plaintiff argues the court erred in denying her counsel fees when it determined she played a key role "in keeping the investment properties running" despite defendant arguing plaintiff was not entitled to equitable distribution of the properties. She contends he acted in bad faith by making the argument and seeking relief consistent with the pre-marital agreement, despite the trial court invalidating it.

Defendant argues the court's decision included a complete analysis of <u>Rule</u> 5.3-5(c). He contends the fact that a case goes to trial, or a party takes a specific position in their testimony is not a reason for an assessment of counsel fees. He notes the court specifically found the parties acted reasonably. He further contends there is not a rule that requires fee shifting when one party has greater funds.

The trial court provided a concise reasoning in its original determination. Specifically, it addressed the applicable court rules and statutes and detailed its findings as to each factor enumerated pursuant to <u>Rule</u> 5.3-5(c). It noted in its analysis defendant was not acting bad faith because "although the prenuptial agreement was found invalid[,] the parties were under the assumption it was a valid argument leading to the reasonableness of the[] proceedings." It delineated defendant's financial circumstances in comparison to plaintiff's and noted he was

in a better financial situation, but plaintiff would be receiving a considerable amount in support and assets.

Nonetheless, because we have vacated the distribution of the support award, vacated the distribution of one asset, and remanded for a recalculation of the amount of distribution of another asset, upon remand the court must once again review the reasonableness of plaintiff's fee application pursuant to the statutory factors and determine whether she is eligible for counsel fees.

In sum, we vacate the trial court's award of alimony, as well as its equitable distribution of the specific properties mentioned in this opinion, and remand for further proceedings consistent with this opinion. We vacate the trial court's denial of counsel fees and order it to consider whether plaintiff is entitled to counsel fees after the support and equitable distribution awards are recalculated.

Affirmed in part, reversed in part, and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4041-21