NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-1312-17T1

ANNA BERMEO,

        Plaintiff-Appellant,

v.

MARIO BERMEO,

        Defendant-Respondent.

_____

> **APPROVED FOR PUBLICATION**
>
> **November 21, 2018**
>
> **APPELLATE DIVISION**

Submitted October 23, 2018 – Decided  November 21, 2018

Before Judges Fisher, Geiger and Firko.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Monmouth County, Docket No. FM-13-1076-14.

Ansell, Grimm & Aaron, PC, attorneys for appellant (Donna L. Maul, of counsel and on the briefs).

Jeffrey R. Brown, attorney for respondent.

The opinion of the court was delivered by

FIRKO, J.S.C. (temporarily assigned)

Plaintiff appeals from an order denying her post-judgment motion to modify the parties' Property Settlement Agreement (PSA)[1] to increase her alimony payments, establish the marital lifestyle, and for counsel fees.[2] We affirm.

I.

Plaintiff and defendant were married in 1986. They had two children, who were both emancipated at the time of divorce. Prior to trial, the parties reached a settlement, and a prior judge entered a final judgment of divorce incorporating their PSA on June 24, 2015, that provided:

> Effective June 1, 2015, [defendant] shall pay to [plaintiff] the sum of $4,000[] per month in taxable alimony based on his annual gross imputed enhanced base income of $160,000[] per year agreed upon for alimony purposes. As additional alimony to [plaintiff], [defendant] shall allocate to [plaintiff] and pay her, effective June 1, 2015, the following percentages of all supplemental compensation income referred to as gross enhanced income, including but not limited to gross commissions, bonuses, deferred compensation, stock options and incentives, on the following graduated scale, above $160,000[].

---

[1]  Judge Angela White Dalton refers to the PSA as an MSA. The parties' agreement was referred to as both in the record. To obviate any confusion, we refer to the agreement as "PSA."

[2]  These are the pertinent issues on appeal. Other issues are either moot or abandoned.

A-1312-17T1

Supplemental compensation of [defendant] payable as additional alimony to [plaintiff]:

a. 35% of gross enhanced income earned by or awarded to [defendant] between $160,000[] and $300,000[];

b. 30% of gross enhanced income between $300,000[] and $480,000[]; and

c. 25% of gross enhanced income from $480,000[]-$550,000[]. Any gross enhanced income in the form of commissions, bonuses, deferred compensation, stock options and incentives earned above $550,000[] will belong to [defendant] free of any claim of [plaintiff].

Pertinently, the parties' PSA also provided:

Neither party shall be able to maintain a similar lifestyle to that which was enjoyed during the marriage; which lifestyle involved significant regular savings, yet they each desire to nonetheless enter into this support arrangement. The parties have been explained the cases of Crews v. Crews,[3] and Lepis v. Lepis,[4] and understand that support is reviewable to the court upon application of either party and a showing of substantially changed financial circumstances . . . The parties freely and voluntarily waive determination of the joint marital lifestyle at this time.

[(emphasis added).]

---

[3] 164 N.J. 11 (2000).

[4] 83 N.J. 139 (1980).

Plaintiff's income was imputed at $25,000 per year even though she earns $6,000 per year working as a receptionist at a gym. She sought an alimony increase to $6,000 per month based upon a requested new "imputed annual income" of $220,000 to defendant, which she argues is far less than his prior average annual income of $467,100 for years 2010-2013. The PSA recognized defendant recently changed his employment, and calculated income for alimony purposes on his prior five year earnings history. When the divorce judgment was entered, defendant started a new job at Cantor Fitzgerald as a foreign trader. His base salary was $120,000 annually. As a result of declining compensation and anticipated layoffs, defendant resigned from his former employment at New Edge, U.S., reasoning that a reduced income was preferable to no income, as he felt termination from his former employer was imminent.

Plaintiff argued that she is entitled to an increase to $6,000 per month in alimony because defendant is "voluntarily underemployed," and she "had the reasonable expectation of receiving supplemental alimony, based on the breadth and depth of [defendant's] express[ions] in the PSA." She further asserts that she cannot maintain the upper middle class lifestyle she enjoyed during the marriage; her income is modest because she was a stay-at-home

mother; and an analysis pursuant to <u>Crews</u> was not conducted by the judge who granted the divorce.

Defendant argues that when the divorce was granted, plaintiff agreed to the alimony provisions and his imputed income despite his disclosure of new employment and lower earnings. He argues that the PSA acknowledges this, and based alimony on his prior five year earnings history. Defendant emphasizes that the PSA provides: "Neither party shall be able to maintain a similar lifestyle to that which was enjoyed during the marriage." Voluntarily, he agreed to pay more alimony than what he thought was necessary since he was only earning $120,000 and not the imputed amount of $160,000 annually.

After hearing oral argument, the motion judge issued an October 3, 2017 order and eight-page statement of reasons denying the aspects of plaintiff's motion which are the subject of this appeal.

II.

Plaintiff raises the following arguments on appeal:

> POINT I
>
> THE TRIAL COURT ERRED IN DENIAL OF ALIMONY MODIFICATION, AND A FINDING OF SUBSTANTIALLY CHANGED CIRCUMSTANCES BY THE FAULTY DETERMINATION THAT [PLAINTIFF] WAS NOT ENTITLED TO RETURN TO COURT FOR MODIFICATION OF HER BASE ALIMONY, IF THE SUPPLEMENTAL ALIMONY PAYMENTS WERE NOT RECEIVED.

POINT II

THE TRIAL COURT WAS OBLIGATED UPON FILING OF A MODIFICATION MOTION TO ESTABLISH THE MARITAL LIFESTYLE AND THE FINDINGS OF THE COURT NEVER ADDRESSED THAT ISSUE IN THE ORDER UNDER APPEAL, EVEN WHERE ALIMONY IS ESTABLISHED BY CONSENSUAL AGREEMENT.

POINT III

THE DENIAL OF APPELLANT'S APPLICATION TO REQUIRE AN INCREASE IN BASE ALIMONY AS A RESULT OF [DEFENDANT'S] FAILURE TO RETURN TO ANY SEMBLANCE OF HIS HISTORICAL EARNINGS DURING THE MARRIAGE WAS CLEAR ERROR AND REWARDS [DEFENDANT] FOR HIS MALFEASANCE IN WANTONLY ABANDONING STABLE LUCRATIVE EMPLOYMENT DURING THE DIVORCE PROCEEDING.

We have considered plaintiff's arguments in light of the record and applicable law, and are not persuaded by them. We affirm substantially for the reasons expressed by Judge Angela White Dalton in her comprehensive statement of reasons and we add the following comments.

"[W]hile settlement is an encouraged mode of resolving cases generally, 'the use of consensual agreements to resolve marital controversies' is particularly favored in divorce matters." Weishaus v. Weishaus, 180 N.J. 131, 143 (2004) (quoting Konzelman v. Konzelman, 158 N.J. 185, 193 (1999)). Spousal agreements "are essentially consensual and voluntary in character and

therefore entitled to considerable weight with respect to their validity and enforceability notwithstanding the fact that such an agreement has been incorporated in a judgment of divorce." Petersen v. Petersen, 85 N.J. 638, 642 (1981). "For these reasons, 'fair and definitive arrangements arrived at by mutual consent should not be unnecessarily or lightly disturbed.'" Konzelman, 158 N.J. at 193-94 (quoting Smith v. Smith, 72 N.J. 350, 358 (1977)).

Courts have continuing power to oversee divorce agreements, and the discretion to modify them on a showing of changed circumstances that render their continued enforcement unfair, unjust and inequitable. Konzelman, 158 N.J. at 194 (citing Lepis, 83 N.J. at 154-55). Furthermore, a movant is entitled to a plenary hearing only when demonstrating the existence of a genuine issue of material fact entitling the party to relief through competent supporting documents and affidavits. Lepis, 83 N.J. at 159; Eaton v. Grau, 368 N.J. Super. 215, 222 (App. Div. 2004).

We find no abuse of discretion by the motion judge in ruling on plaintiff's motion without ordering discovery or a plenary hearing. "Every application for alimony or increased alimony rests upon its own particular footing and the appellate court must give due recognition to the wide discretion which our law rightly affords to the trial judges who deal with these matters." Martindell v. Martindell, 21 N.J. 341, 355 (1956); Spangenberg v.

Kolakowski, 442 N.J. Super. 529, 536 (App. Div. 2015). For the court to reverse a trial court's decision on whether to modify alimony:

> [we] must conclude that the trial court clearly abused its discretion, failed to consider "all of the controlling legal principles," or [we] must otherwise be "well satisfied that the finding[s] [were] mistaken," or that the determination could not "reasonably have been reached on sufficient credible evidence present in the record after consideration of the proofs as a whole."
>
> [Rolnick v. Rolnick, 262 N.J. Super. 343, 360 (App. Div. 1993) (internal citations omitted).]

We find no such abuse of discretion by the trial court.

III.

In addressing Point I on this appeal, no evidence was proffered by plaintiff that defendant is voluntarily underemployed, or that he has concealed his true income from her, warranting an increase in alimony so that the "supplemental compensation" contemplated in the PSA is realized; or that discovery, including an employment evaluation, is necessary. Plaintiff voluntarily entered into a well-negotiated PSA. There is no allegation that she was ill, or under the influence of intoxicants during negotiation of the PSA. Defendant did not subject her to duress, coercion, or threats. He did not conceal or fail to disclose his income. At the time of divorce, defendant was already earning $120,000 annually, and plaintiff was made aware of his reasons for leaving New Edge, U.S., which she had the opportunity to

8

challenge by going to trial.  Instead, she agreed to the PSA terms.  The motion judge aptly noted that the court "cannot simply impute income based on history when that history was considered in the drafting of the [P]SA."  Given these circumstances, we see no legal or equitable basis to modify alimony.

## IV.

Turning to plaintiff's argument in Point II, the motion judge did not err by declining to address marital lifestyle because the PSA unequivocally states at paragraph ten:  "The parties freely and voluntarily waive determination of the joint marital lifestyle at this time."  There was no obligation for the motion judge to conduct a <u>Crews</u> analysis post-judgment, especially given the recent settlement.  Such a determination was not reserved in the PSA.  We find no abuse of discretion.  We note that plaintiff was represented by counsel in the negotiation of the PSA.  She testified that she understood the terms of the agreement.  Her assertion that defendant should be earning more because he had a "far greater income" during the marriage is without merit because she has not demonstrated substantially changed circumstances.  As duly found by the motion judge:  "The parties entered in[to] their agreement with a set base alimony figure and this court [cannot] find reason to disturb it."  We agree.  Consequently, a <u>Crews</u> analysis was not warranted here.

Turning to the last point of plaintiff's appeal, the record aptly supports the motion judge's conclusion that it would be improvident to now impute income to defendant of $220,000 per year, which is less than the $300,000 to $500,000 he earned during the marriage. The motion judge correctly found that imputing income is a "discretionary matter not capable of precise or exact determination but rather requiring a trial judge to realistically appraise capacity to earn and job availability." Gnall v. Gnall, 432 N.J. Super. 129, 158 (App. Div. 2013), rev'd on other grounds, 222 N.J. 414 (2015) (quoting Storey v. Storey, 373 N.J. Super 464, 474 (App. Div. 2004)). Defendant provided a pay stub confirming his annual income at approximately $120,000. Plaintiff's proofs validate this amount because defendant's employer reported to her that all 401(k) contributions are reported on the W-2 statement. As noted by the motion judge: "While it would appear from the [PSA] that both parties hoped [defendant] would get back to those higher earnings, the court cannot change the fact that it has not." Moreover, we are mindful that defendant has complied with the alimony provisions set forth in the PSA even though he has not earned the imputed $160,000 floor. As a court of equity, the motion judge aptly pointed out that, "[i]t would be unthinkable for defendant to ask the court

to reduce his alimony based on changed circumstances because he has not earned $160,000 per year since the divorce." We agree.

Plaintiff did not make a prima facie showing of changed circumstances following the entry of the final judgment of divorce. The motion judge's findings are supported by the record. Discovery and a plenary hearing were not required.

To the extent we have not addressed plaintiff's remaining arguments, we find them without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1312-17T1