**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0914-20

K.M.B.,

    Plaintiff-Respondent,

v.

W.G.B.,

    Defendant-Appellant.

_____

Submitted December 15, 2021 – Decided March 31, 2022

Before Judges Gooden Brown and Gummer.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Gloucester County, Docket No. FM-08-0342-15.

David T. Garnes, attorney for appellant.

Puff & Cockerill LLC, attorneys for respondent (Christine C. Cockerill, on the brief).

PER CURIAM

In this post-judgment matrimonial appeal, defendant W.G.B.[1] appeals an order reinstating his alimony obligation and an order denying his motion for reconsideration. Because the trial court did not err in reinstating defendant's alimony obligation without a plenary hearing, we affirm.

We glean these facts from the record, focusing on defendant's alimony obligation, which is the subject of this appeal. The parties married in 1999, had a daughter in 2002, and divorced on December 17, 2015, by way of a final judgment, which incorporated the parties' property settlement agreement (PSA). Plaintiff became permanently disabled as a result of something that occurred during childbirth and has been receiving social security disability benefits since then. In April 2015, prior to the parties' divorce, defendant sustained injuries in a car accident, which, according to defendant, rendered him disabled such that he receives social security disability benefits. In the PSA, the parties agreed defendant would have an imputed annual income of $35,000, a weekly alimony obligation of $125 effective December 1, 2015, and a weekly child support obligation of $136 effective June 1, 2015, which would be reduced to $112 when his alimony obligation began on December 1, 2015. Because of defendant's

---

[1] We use initials to protect the privacy of the parties and preserve the confidentiality of certain records because we discuss the parties' financial circumstances. See R. 1:38-3(d)(1).

A-0914-20

scheduled foot surgery, the parties agreed in the PSA to suspend enforcement of his alimony and child support obligations until April 11, 2016, which was the anticipated end of a twelve-week surgical rehabilitation period. At that time, his alimony obligation would be reviewed and his ability to earn money, obtain social security disability benefits, and pay alimony would be determined. The record is devoid of any indication that review occurred.

On November 2, 2016, defendant moved to reduce his alimony and child support obligations. Plaintiff cross-moved, asking the court to require defendant to make a lump-sum payment towards his child support and alimony obligation arrears, among other things. On March 17, 2017, the court issued an order holding defendant's motion "pending re-list," scheduling a hearing, and requiring defendant to provide proof of his social-security award and pay $1,000 towards his child support and alimony arrears. The court subsequently issued another interim order, holding the motion and cross-motion "pending re-list" and requiring defendant to provide proof of his social security award.

On June 8, 2017, the day of the scheduled plenary hearing, the parties resolved the issues amicably and entered into a consent order. As memorialized in the order, the parties agreed, among other things, to suspend defendant's alimony obligation beginning June 1, 2017, and to reduce his weekly child

A-0914-20

support obligation. Additionally, the parties "warrant[ed] and represent[ed] that neither party has the ability to work and earn any additional income as of [June 8, 2017]" and defendant "represent[ed] that he is unable to work as a performer at this time."

On May 13, 2020, defendant moved to emancipate the parties' then seventeen-year-old daughter and to "[r]ecoup monies taken for back child support that is not owed." In support of the motion, defendant asserted he and his wife had received "a letter from the government stating that both [their] stimulus checks . . . were going towards back child support [he] owed." Defendant sought: the "[o]rder that was put in place on 5/5/17 be effective 12/01/17 like originally agreed upon"; "[a]ll back child support that was collected be paid back to [defendant] . . . includ[ing] [s]timulus checks ($2400) from both [defendant's] wife and [defendant]"; and the emancipation of their daughter with "all support obligations terminated on 6/16/2020."

Plaintiff cross-moved, seeking, among other things, an order requiring defendant to provide an updated case information statement for purposes of reviewing defendant's alimony and child support obligations and to recommence weekly alimony payments of $125, which had been suspended since 2017. She

A-0914-20

asserted defendant had been performing as a musician in bands and as a solo artist and asserted "[h]e must be earning money from these 'gigs.'"

Opposing plaintiff's cross motion, defendant submitted an "updated" case information statement in which he reported his gross earned income for 2019 was $27,610.14. He also submitted his 2019 W-2 statements, which showed that in addition to his $1,500 monthly social security disability benefits, defendant in 2019 had earned $12,474.36 from one employer and $3,749.74 from another employer, for a total income of $34,224.10. Defendant did not ask for a plenary hearing, did not ask for discovery, and did not ask for leave to submit an expert report.

At oral argument, plaintiff's counsel argued defendant's W-2 statements demonstrated he had earned income in 2019, which he had not previously disclosed. She also contended defendant was earning additional income, which he did not report, from his work as a musician. Defendant testified that although he had "tried" to work twice and had "made money" in 2019, he "could not work" and he had "not had a job in 2020." Defendant also asserted he had tried but was unable to perform with a band due to his injuries and, although he had performed virtually via Facebook Live several times during the COVID-19 pandemic, including twice in the prior six weeks, he had received only a minimal

5

amount in tips. He asserted he "do[esn't] have an income." When the trial court questioned defendant about his 2019 W-2 statements, he responded he had "pushed [him]self," but "[t]he pain was too much" and he "couldn't work anymore."

After oral argument, the trial court placed a decision on the record and issued an order denying defendant's motion. In addition to other aspects of plaintiff's cross-motion, the court granted plaintiff's request to reinstate weekly alimony payments of $125, finding "that money could be earned" as "[i]t was earned previously." Although the court understood defendant had stopped working because there was "pain involved," it found defendant had "done things like performing as recently as a couple of weeks ago" and was "able . . . to be active in some way . . . which show[ed] . . . he's able to do some things in order to get some income." Finding defendant's income was "approximately the same as it was before" when the parties had entered the PSA, the court reinstated immediately the agreed-upon alimony set forth in the PSA.

Defendant moved for reconsideration. In his certification, defendant asserted he "was not given the chance to explain what [he was] going through personally" and the motion judge "did not get a complete understanding of [his] current situation." He argued "[j]ust because [he had] attempted to work in

A-0914-20

2019, [that] should not be a reason why alimony . . . should be reinstated," alleging he had "not worked in 2020 at all."  Plaintiff opposed his motion and cross-moved for fees.

During oral argument, defense counsel faulted the court for rendering a decision with no "expert testimony indicating that [defendant] ha[d] the ability [to pay his alimony obligation] based upon that unsuccessful effort [to work] in 2019."  He asserted defendant "does not have capacity to work."  When asked by the court how defendant met the standard for reconsideration, defense counsel responded, "it really comes . . . down to just an equity argument . . . especially as it relates to his disability . . . [as] it relates to his ability to work."  The trial court denied the motion.

Defendant makes one argument on appeal, contending the trial court abused its discretion by reinstating his alimony obligation despite his disability and without a plenary hearing to determine his ability to pay it.

"We review the Family Part judge's findings in accordance with a deferential standard of review, recognizing the court's 'special jurisdiction and expertise in family matters.'"  Thieme v. Aucoin-Thieme, 227 N.J. 269, 282-83 (2016) (quoting Cesare v. Cesare, 154 N.J. 394, 413 (1998)).  We reverse "only when a mistake must have been made because the trial court's factual findings

are 'so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice . . . .'" Spangenberg v. Kolakowski, 442 N.J. Super. 529, 535 (App. Div. 2015) (quoting Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am., 65 N.J. 474, 484 (1974)).  We review de novo questions of law.  Amzler v. Amzler, 463 N.J. Super. 187, 197 (App. Div. 2020).  We review under an abuse-of-discretion standard a trial court's alimony-modification decision, Spangenberg, 442 N.J. Super. at 536, and reconsideration denial, Branch v. Cream-O-Land Dairy, 459 N.J. Super. 529, 541 (App. Div. 2019).

Settlement of matrimonial disputes is "encouraged and highly valued in our system."  Quinn v. Quinn, 225 N.J. 34, 44 (2016).  Settlement agreements are governed by basic contract principles and, as such, courts should discern and implement the parties' intent.  J.B. v. W.B., 215 N.J. 305, 326 (2013).  "The court's role is to consider what is written in the context of the circumstances at the time of drafting and to apply a rational meaning in keeping with the 'expressed general purpose.'"  Pacifico v. Pacifico, 190 N.J. 258, 266 (2007) (quoting N. Airlines, Inc. v. Schwimmer, 12 N.J. 293, 302 (1953)).

Generally, a court is "authorized to modify alimony and support orders 'as the circumstances of the parties and the nature of the case' require."  Halliwell

A-0914-20

v. Halliwell, 326 N.J. Super. 442, 448 (App. Div. 1999) (quoting N.J.S.A. 2A:34-23). A party seeking a modification of alimony and child support obligations must demonstrate changed circumstances "as would warrant relief." Lepis v. Lepis, 83 N.J. 139, 157 (1980); see also Spangenberg, 442 N.J. Super. at 536.

"A hearing is not required or warranted in every contested proceeding for the modification of a judgment or order relating to alimony." Murphy v. Murphy, 313 N.J. Super. 575, 580 (App. Div. 1998); see also Palombi v. Palombi, 414 N.J. Super. 274, 290 (App. Div. 2010) ("Not every Lepis application requires a plenary hearing."). "[A] party must clearly demonstrate the existence of a genuine issue as to a material fact before a hearing is necessary." Lepis, 83 N.J. at 159; see also Bermeo v. Bermeo, 457 N.J. Super. 77, 83 (App. Div. 2018) (a party "is entitled to a plenary hearing only when demonstrating the existence of a genuine issue of material fact . . . .").

> In determining whether a material fact is in dispute, a court should rely on the supporting documents and affidavits of the parties. Conclusory allegations would, of course, be disregarded. Only statements to which a party could testify should be considered. Thus, if the sole dispute centered around the supporting spouse's earnings, the disclosure of income tax returns might render a hearing unnecessary.
>
> [Lepis, 83 N.J. at 159.]

9

Here, no genuine issue of material fact required the trial court to conduct a plenary hearing before deciding the parties' motions.

In the PSA, the parties agreed defendant's weekly alimony obligation was $125 based on an imputed yearly income of $35,000. Because of defendant's scheduled surgery, the parties agreed to suspend enforcement of his alimony obligation. Defendant subsequently moved to reduce his alimony obligation. Based on defendant's representation he was unable to work due to his disability and unable to earn additional income, the parties entered into a consent order in 2017 suspending defendant's alimony obligation.

As a result of defendant's motion to emancipate the parties' daughter and to recoup child support payments and plaintiff's cross-motion, evidence – defendant's W-2 statements, his updated case information statement, and his own testimony – was submitted to the court demonstrating in 2019 defendant had been able to work, had been able to earn additional income, and had earned a total annual income of $34,224.10, nearly the amount the parties had considered when they had agreed in the PSA to a weekly alimony obligation of $125. That undisputed evidence, not an assumption of defendant's earning capacity, was the basis for the court's reinstatement of defendant's alimony obligation, and it clearly demonstrated a change in circumstance from the

10

representations defendant had made in the 2017 consent order about his inability to work or to earn additional income. The trial court did not abuse its discretion when, based on that evidence, it reinstated the alimony obligation on which the parties had expressly agreed in the PSA. Nor did it abuse its discretion in denying defendant's motion for reconsideration.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

11