**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1941-23

NADEZHDA SHERMAN,

    Plaintiff-Respondent,

v.

HOWARD SHERMAN,

    Defendant-Appellant.

_____

> Argued October 17, 2024 – Decided December 18, 2024
>
> Before Judges DeAlmeida and Puglisi.
>
> On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Middlesex County, Docket No. FM-12-2076-15.
>
> Bonnie C. Frost argued the cause for appellant (Einhorn, Barbarito, Frost & Botwinick, PC, attorneys; Bonnie C. Frost and Jessie M. Mills, on the briefs).
>
> Nadezhda Sherman argued the cause pro se.

PER CURIAM

In this post-judgment matrimonial matter, defendant Howard Sherman appeals from the December 12, 2023 Family Part order denying his motion to terminate his spousal support obligation to plaintiff Nadezhda Sherman and the January 18, 2024 order granting plaintiff's motion to enforce litigant's rights. We affirm both orders.

After a fifteen-year marriage, the parties were divorced in February 2016 pursuant to a dual judgment of divorce that incorporated a marital settlement agreement (MSA). Pursuant to the MSA, defendant was required to pay plaintiff $300 spousal support per week "[e]xcept by further court order, for 520 weeks, either party's death, the remarriage of the party receiving spousal support, or whichever occurs first."

The MSA also included an anti-Lepis[1] clause:

> Parties agree that the spousal support is non-modifiable, and agree that such same is in consideration of the equitable distribution of marital assets and debts. Parties agree this waiver of the right to make any application for alimony modification shall be final and non-modifiable. The parties have envisioned and considered any and all foreseeable and unforeseeable events occurring to either the [w]ife or the [h]usband in making this waiver to modify alimony in the future.

_____

[1] Lepis v. Lepis, 83 N.J. 139 (1980).

In June 2023, defendant, represented by counsel, filed a motion seeking to terminate his spousal support obligation retroactive to November 5, 2020, based on plaintiff's purported cohabitation with her boyfriend, and for plaintiff to reimburse him for the private investigator costs and counsel fees associated with the motion.

Plaintiff cross-moved to enforce previous judgments of spousal and child support, order defendant to pay arrears of $136,085.39 in ten equal payments over ten months, and require him to provide proof of life insurance.

On August 28, 2023, the court denied without prejudice defendant's motion pending a plenary hearing and granted plaintiff's motion to enforce prior orders for alimony and child support. A few weeks later, the court conducted a virtual prehearing in connection with the motion to terminate spousal support during which both parties stated they were owed discovery. The court set a deadline for the exchange of outstanding discovery and the date for the in-person plenary hearing.

On November 9, 2023, plaintiff filed a motion to find defendant in violation of litigant's rights for failing to comply with the MSA, hold him in contempt for violating the MSA and five prior support orders, and order him to

3

pay arrears of $142,770.41 in reasonable weekly installments. Defendant did not oppose the motion.

Defendant also did not appear at the plenary hearing on his cohabitation motion. His counsel explained defendant had health issues and, because there was an outstanding warrant for his child support arrears, elected not to appear in person because "he [was] afraid of being put in jail." With defendant not appearing to testify, counsel could not seek to have the private investigator's report admitted into evidence. Instead, the court permitted counsel to establish his case-in-chief through direct examination of plaintiff.

Defendant's counsel elicited the following facts from plaintiff: she and her boyfriend were dating for two years; they slept together on a regular basis; he also stayed at his parents' house, where he maintained his residence; they vacationed together; his dog stayed at her residence and she walked it; and she listed her boyfriend, along with two of her other friends, as emergency contacts for her eighteen-year-old daughter's school.

Although there was a threshold issue of whether the MSA's anti-Lepis clause precluded the relief sought by defendant, the court did not reach this question because it found defendant failed to prove by preponderance of the evidence that plaintiff was cohabiting. The court noted plaintiff's boyfriend

4

listed his parents' address as his residence, where he occasionally stayed. Plaintiff and her boyfriend had separate bank accounts, did not comingle funds and did not have bills in common. Plaintiff paid her own bills without the boyfriend's support, and he did not provide her any other financial support. Thus, the court determined not "all of the indicia for cohabitation are present or even the majority of the indicia for cohabitation are present."

After denying defendant's motion to terminate spousal support, the court ordered him to file an updated case information statement (CIS) within seven days to establish payment of the support arrears.

On January 16, 2024, the court conducted an ability to pay hearing on plaintiff's motion. Defendant again failed to appear, and counsel did not appear on his behalf. The court noted defendant's counsel filed "some paperwork" indicating defendant owned his own company. Defendant's 2022 tax return indicated earnings in excess of $85,000. His bank statements also showed his mother made deposits of $74,000 in 2022 and $190,000 in 2023. The court ordered defendant to pay arrears within ten days:

> He has $190,000. He's not here to say that he doesn't have it. He's not here to indicate why that's not true. He's been given an opportunity to be here. He's purposely decided that he does not want to appear here today. So I am going to order that that amount be paid within ten days.

5

This appeal followed.

Our scope of review of Family Part orders is narrow. Cesare v. Cesare, 154 N.J. 394, 411 (1998). We "accord particular deference to the Family Part because of its 'special jurisdiction and expertise' in family matters," Harte v. Hand, 433 N.J. Super. 457, 461 (App. Div. 2013) (quoting Cesare, 154 N.J. at 413), and we will not overturn the Family Part's findings of fact when they are "supported by adequate, substantial, credible evidence," Cesare, 154 N.J. at 412. A reviewing court will also not disturb the Family Part's factual findings and legal conclusions that flow from them unless they are "so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Ricci v. Ricci, 448 N.J. Super. 546, 564 (App. Div. 2017) (quoting Elrom v. Elrom, 439 N.J. Super. 424, 433 (App. Div. 2015)). We review a Family Part's legal determinations de novo. Id. at 565.

"Every application for alimony or increased alimony rests upon its own particular footing and the appellate court must give due recognition to the wide discretion which our law rightly affords to the trial judges who deal with these matters." Bermeo v. Bermeo, 457 N.J. Super. 77, 83-84 (App. Div. 2018)

(quoting Martindell v. Martindell, 21 N.J. 341, 355 (1956)). "[T]o reverse a trial court's decision on whether to modify alimony," we

> must conclude that the trial court clearly abused its discretion, failed to consider "all of the controlling legal principles," or . . . must otherwise be "well satisfied that the finding[s] [were] mistaken," or that the determination could not "reasonably have been reached on sufficient credible evidence present in the record after consideration of the proofs as a whole."
>
> [Id. at 84 (alterations in original) (quoting Rolnick v. Rolnick, 262 N.J. Super. 343, 360 (App. Div. 1993)); J.E.V. v. K.V., 426 N.J. Super. 475, 485 (App. Div. 2012).]

However, the family court's "legal conclusions, and the application of those conclusions to the facts," are reviewed de novo. Reese v. Weis, 430 N.J. Super. 552, 568 (App. Div. 2013) (citing Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

"[W]e review the interpretation of a[n MSA] de novo." Amzler v. Amzler, 463 N.J. Super. 187, 197 (App. Div. 2020). An MSA is a contract, Quinn v. Quinn, 225 N.J. 34, 45 (2016), and therefore "we pay no special deference to the [family] court's interpretation and look at the contract with fresh eyes." Kieffer v. Best Buy, 205 N.J. 213, 223 (2011) (alteration in original).

When a party moves for modification of an alimony obligation, the trial court undertakes a two-step inquiry. The first step determines whether the

movant has demonstrated "a prima facie showing of changed circumstances." Miller v. Miller, 160 N.J. 408, 420 (1999) (citing Lepis, 83 N.J. at 157-59).  The second step of the analysis evaluates whether the change is so significant it renders "enforcement of the [existing] agreement inequitable" and justifies a modification of support.  Glass v. Glass, 366 N.J. Super. 357, 379 (App. Div. 2004).

A modification or termination of an alimony obligation is permitted upon a showing of changed circumstances that render the agreed upon terms no longer "fair and equitable."  Lepis, 83 N.J. at 148; see Morris v. Morris, 263 N.J. Super. 237, 241 (App. Div. 1993); see also N.J.S.A. 2A:34-23 ("Orders . . . may be revised and altered by the court from time to time as circumstances may require.").

The alimony statute was amended in 2014 to provide for the suspension or termination of spousal support "if the payee cohabits with another person." N.J.S.A. 2A:34-23(n); L. 2014, c. 42, § 1.  In enacting this prospective amendment, the Legislature did not intend to change the "Lepis changed circumstances paradigm."  Landau v. Landau, 461 N.J. Super. 107, 116 (App. Div. 2019).

A-1941-23

Cohabitation is defined as "a mutually supportive, intimate personal relationship in which a couple has undertaken duties and privileges that are commonly associated with marriage or civil union but does not necessarily maintain a single common household."  N.J.S.A. 2A:34-23(n).  The statute "prescribe[s] seven factors, most of which are analogous to the factors identified in Konzelman v. Konzelman, 158 N.J. 185 (1999), to guide the court's determination."  Cardali v. Cardali, 255 N.J. 85, 93-94 (2023) (citation reformatted) (citing N.J.S.A. 2A:34-23(n)).  Pursuant to the amended statute, a court must consider the following factors when assessing whether persons are cohabiting:

> (1) Intertwined finances such as joint bank accounts and other joint holdings or liabilities;
>
> (2) Sharing or joint responsibility for living expenses;
>
> (3) Recognition of the relationship in the couple's social and family circle;
>
> (4) Living together, the frequency of contact, the duration of the relationship, and other indicia of a mutually supportive intimate personal relationship;
>
> (5) Sharing household chores;
>
> (6) Whether the recipient of alimony has received an enforceable promise of support from another person within the meaning of subsection h. of N.J.S.A. 25:1-5; and

(7) All other relevant evidence.

[N.J.S.A. 2A:34-23(n).]

A court must also "consider the length of the relationship" and "may not find an absence of cohabitation solely on grounds that the couple does not live together on a full-time basis." Ibid.

Defendant argues the alimony statute applies here. He claims that while the MSA addresses remarriage, it is silent on the issue of cohabitation, and he cites Quinn for the proposition that cohabitation can qualify as remarriage for purposes of the alimony statute. 225 N.J. at 54 ("When the facts support no conclusion other than that the relationship has all the hallmarks of a marriage, the lack of official recognition offers no principled basis to treat cohabitation differently from remarriage as an alimony-terminating event.").

Defendant also maintains the MSA is "contradictory and ambiguous" because it included an anti-Lepis provision prohibiting the modification of alimony, but also provided for alimony to be modified by court order.

We need not resolve the ambiguity in the MSA because we agree with the trial court's determination that defendant failed to prove plaintiff was cohabiting with her boyfriend under the factors enumerated in N.J.S.A. 2A:34-23(n). Plaintiff's uncontroverted testimony established she and her boyfriend did not

have intertwined finances nor did they share responsibility for any living expenses; to the contrary, she testified she rented her own apartment and paid her own bills. Counsel did not ask her any questions about whether the relationship was recognized by family or friends, nor was any evidence introduced to address this factor. Plaintiff testified she and her boyfriend did not live together but slept together on a regular basis for the past two years. Counsel did not elicit any testimony regarding household chores other than responsibilities for dog-walking. Finally, there was no evidence or testimony establishing plaintiff received an enforceable promise of support from another person.

In support of his contention plaintiff was cohabiting, defendant's brief largely relies on information contained in the private investigator's report and statements in certifications attached to his motion. We decline to consider these documents or alleged facts because they were not admitted as evidence during the hearing and, therefore, were not considered by the court in its decision. Based on the sparse testimony adduced during the hearing, we discern no abuse of discretion in the trial court's factual recitation and agree with its determination defendant failed to prove cohabitation by a preponderance of the evidence.

11

We are also unpersuaded by defendant's complaints that plaintiff failed to respond to discovery. During the prehearing conference, both parties contended they were due discovery. The court set discovery deadlines and invited either party to file a motion if the adversary's responses were deficient, and defendant did not do so.

Prior to the plenary hearing, defendant's counsel did not complain about any outstanding discovery requests; to the contrary, plaintiff stated she had not received full discovery, including five years of defendant's bank statements. Defendant's counsel conceded the deficiency, both parties confirmed they waived depositions, and the plenary hearing commenced. Ordinarily, we "decline to consider issues not presented to the trial court unless they 'go to the jurisdiction of the trial court or concern matters of great public interest[,]'" neither of which applies here. Kvaerner Process, Inc. v. Barham-McBride Joint Venture, 368 N.J. Super. 190, 196 (App. Div. 2004) (quoting Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973)).

Turning to the ability to pay hearing, defendant first argues the court should have permitted him to appear virtually. Although defendant cast his request for a virtual appearance in light of his responsibility to care for his mother and inability to afford airfare, defendant's counsel previously

represented to the court defendant did not want to appear in person because he feared arrest on an outstanding child support warrant. On these facts, we discern no abuse of discretion in the court's declining defendant's request to appear virtually.

We are also unpersuaded by defendant's contention the court erred by considering plaintiff's November 9, 2023 motion unopposed because he filed a certification in opposition to her July 11, 2023 cross-motion. This argument conflates plaintiff's two separate motions for relief and contravenes Rule 1:6-2(a), which provides a motion is deemed uncontested unless responsive papers are timely filed and served. Plaintiff's July 11, 2023 motion was disposed of on August 28, 2023. Because defendant did not file any response to the November 9, 2023 motion,[2] the trial court did not abuse its discretion in deeming the motion unopposed. And because plaintiff's unrebutted testimony reflected defendant received bank deposits totaling almost $190,000 in the prior two years and was residing with his parents, the court did not abuse its discretion in determining he had the ability to pay the outstanding arrears within ten days.

---

[2] We also note defendant failed to file an updated CIS as ordered by the court on December 12, 2023.

To the extent we have not expressly addressed any remaining issues raised by defendant, it is because they lack sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

14

A-1941-23