**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1998-23

RENEE FULLER,

     Plaintiff-Appellant,

v.

JAMES FULLER,

     Defendant-Respondent.

_____

Argued November 6, 2025 – Decided June 25, 2026

Before Judges Mayer, Gummer, and Jacobs.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Somerset County, Docket No. FM-18-0109-08.

Robert A. Epstein argued the cause for appellant (Manzi Epstein Lomurro & Decataldo, LLC, attorneys; Robert A. Epstein, of counsel and on the briefs).

Rita M. Aquilio argued the cause for respondent (Lawrence Law, LLC, attorneys; Cynthia J. Lambo, on the brief).

PER CURIAM

In this post-judgment matrimonial matter, plaintiff Renee Fuller appeals from an order denying her motion to enforce a 2018 consent order and require defendant James Fuller to pay their children's college expenses and student loans. Perceiving no abuse of discretion or misapplication of the law, we affirm.

The parties were married in 1996, had two children who were born respectively in 1999 and 2000, and divorced in 2007 by way of a final judgment of divorce that incorporated their 2007 property settlement agreement (PSA). In the PSA, the parties agreed defendant would pay plaintiff weekly child support based on assumptions about what their annual incomes would be. The PSA included a provision entitled "Post Secondary Education," which provided:

> The parents agree to meet and discuss each child's post secondary education at the beginning of each child's junior year in high school. At this time, they will discuss the potential schools the child may attend, the costs, and will endeavor to plan for same and reach an amicable understanding regarding same.
>
> Any and all loans, scholarships, student aid, etc. available to each child, shall first be applied toward that child's post secondary education.
>
> Thereafter, the parents agree their combined total annual obligation toward each child's remaining education costs shall be the equivalent of the annual room, board, tuition, fees, books, reasonable transportation, and reasonable computer costs for a child to attend Kean University at that time. In addition, this obligation will also include reasonable

2

application fees, (for up to five schools), travel (for up to five schools), testing and other normal and reasonable fees associat[ed] with applying for and choosing a school. The parents['] combined contribution to these costs will be paid in proportion to their respective income and taking into consideration their assets at the time. For the purposes of their income propositions, same shall be calculated as it would be via the New Jersey Child Support Guidelines. In addition, the parents agree child support will be reevaluated at the time each child commences post secondary school, taking into consideration whether the child will reside at home or live at school and the amount each parent is contributing to each child's education costs.

In September 2017, defendant emailed plaintiff, suggesting they meet with a mediator to "exchange financial information . . . and to discuss options for the kids['] colleges." Defendant believed the parties "need[ed] to figure out the percentages that we will both have to pay for the kids['] college expenses [and] see what needs to be done for review of child support for next September." In response, plaintiff told defendant she was unable financially to afford a mediator or college expenses and stated "child support c[ould] be addressed at a later date" when the children's college plans were definite.

The parties subsequently reached an agreement, which was memorialized in a May 25, 2018 consent order. Paragraph one of the consent order provided plaintiff's child-support obligation would terminate on July 1, 2018, with neither

3

party thereafter having "an obligation to pay child support to the other party."

Paragraph five of the consent order, entitled "College Expenses," provided:

> The children will be required to apply for financial aid, including reasonable student loans, scholarships, grants and work study. After deducting all aid from each child's college costs, the defendant will be responsible for the remaining college costs, i.e., tuition, room, board, fees charged by the school, books and school supplies. The partes will cooperate to complete and submit [a Free Application for Federal Student Aid] or other form in order to maximize each child's financial aid.
>
> [(Emphasis added).]

That agreement was consistent with the parties' agreement in the PSA that "[a]ny and all loans, scholarships, student aid, etc. available to each child, shall first be applied toward that child's post secondary education" and "[t]hereafter" the parties' obligations for the "remaining education costs" would be determined.

In August 2018 and 2019, student loans were issued to the children with the children as the borrowers and defendant as the co-signor. In October 2019, the parties exchanged emails regarding the loans. Plaintiff expressed concern regarding the interest rates on the loans and "the amount of debt [the children would] have." Defendant explained he had co-signed the loans and would be "paying them as much as [he could] to help the kids so when they get out of college they don't owe a lot" and encouraged plaintiff to "feel free to help."

4

On July 26, 2023, plaintiff's counsel wrote to defendant, asserting defendant had "effectively placed the entire college expense payment burden on the children's shoulders with each child owing upwards of $50,000" contrary to the consent order and demanded payment of the children's college expenses, including the loans. Defense counsel responded and provided information regarding the $42,922.37 defendant purportedly had paid towards the children's college expenses.

On December 6, 2023, plaintiff moved for an order finding defendant in violation of litigant's rights due to his "willful violation" of paragraph five of the consent order and failure to pay the children's college expenses. She asked the court to order defendant to "timely pay for the children's college costs and . . . loan payments" and award her counsel fees and costs. In a supporting certification, plaintiff asserted defendant had "essentially forced [her] into signing" the consent order. She contended that while she was facing bankruptcy, defendant told her that "if the children lived with him full-time and [she] agreed to terminate his child[-]support obligation, then he would completely assume responsibility for the children's college costs." While acknowledging defendant had paid for some of the children's college costs, she argued defendant had

A-1998-23

violated the consent order by "pressur[ing]" the children into co-signing for loans with unreasonable interest rates and failing to repay the loans.

Defendant opposed the motion and cross-moved for a counsel-fee award. In a certification, defendant provided evidence of the payments he had made towards the children's college expenses and disputed plaintiff's interpretation of the consent order, contending nothing in the consent order required him to repay the children's student loans. In a reply certification, plaintiff again asked the court to enforce the consent order, maintaining her position "the express terms of [the c]onsent [o]rder" required "[d]efendant to be 100% responsible for [the] children's college costs."

After hearing argument, the court entered a January 29, 2024 order, denying plaintiff's motion and defendant's cross-motion. In an accompanying statement of reasons, the court found under the "clear and unambiguous" language of the consent order, defendant did not have an obligation to repay the children's student loans. We agree.

Our review of the Family Part's findings is limited. Gormley v. Gormley, 462 N.J. Super. 433, 442 (App. Div. 2019). We apply an abuse-of-discretion standard when reviewing a Family Part order. Voynick v. Voynick, 481 N.J. Super. 207, 221 (App. Div.), certif. denied, 261 N.J. 147 (2025). We "afford

6                                                                    A-1998-23

substantial deference to the Family Part's findings of fact because of that court's special expertise in family matters." W.M. v. D.G., 467 N.J. Super. 216, 229 (App. Div. 2021) (citing Cesare v. Cesare, 154 N.J. 394, 413 (1998)). "Under that deferential standard of review, we are bound to uphold a finding that is supported by sufficient credible evidence in the record." Moynihan v. Lynch, 250 N.J. 60, 90 (2022). "Reversal is reserved for only those circumstances in which we determine the factual findings and legal conclusions of the trial judge went 'so wide of the mark that a mistake must have been made.'" Avelino-Catabran v. Catabran, 445 N.J. Super. 574, 587 (App. Div. 2016) (quoting N.J. Div. of Youth & Fam. Servs. v. M.M., 189 N.J. 261, 279 (2007)). We review questions of law de novo. Cardali v. Cardali, 255 N.J. 85, 107 (2023).

"A consent order is, in essence, an agreement of the parties that has been approved by the court." Hurwitz v. AHS Hosp. Corp., 438 N.J. Super. 269, 292 (App. Div. 2014). Settlement of matrimonial disputes "is encouraged and highly valued in our system." Quinn v. Quinn, 225 N.J. 34, 44 (2016); see also Satz v. Satz, 476 N.J. Super. 536, 549-50 (App. Div. 2023) (same). Settlement agreements, including settlement agreements resolving matrimonial disputes, are "governed by basic contract principles." Quinn, 225 N.J. at 45. Under those guiding principles, "a court should not rewrite a contract or grant a better deal

than that for which the parties expressly bargained." Ibid. "[W]hen the intent of the parties is plain and the language is clear and unambiguous, a court must enforce the agreement as written, unless doing so would lead to an absurd result." Ibid. "To the extent that there is any ambiguity in the expression of the terms of a settlement agreement, a hearing may be necessary to discern the intent of the parties at the time the agreement was entered and to implement that intent." Ibid. A party may ask a court to "set aside" a settlement agreement that was "achieved through coercion, deception, fraud, undue pressure, or unseemly conduct." Brundage v. Est. of Carambio, 195 N.J. 575, 601 (2008) (quoting Peskin v. Peskin, 271 N.J. Super. 261, 276 (App. Div. 1994)).

Although plaintiff contends she was "essentially forced . . . into signing" the consent order and suggests the consent order was contrary to New Jersey public policy and law, plaintiff did not seek to vacate the consent order on the basis of fraud or coercion, because it was void ab initio, or as otherwise contrary to law or policy. Instead, she asked the court to enforce it. The language of the consent order, as the trial court found, is clear and unambiguous. The parties agreed the children were "required to apply for financial aid, including reasonable student loans" and that "[a]fter deducting all aid from each child's college costs, the defendant will be responsible for the remaining college costs."

A-1998-23

As defendant contends, nothing in that language requires him to repay the student loans.

Plaintiff asserts the student loans were not "reasonable" and, therefore, should not be deducted from the children's college costs in determining defendant's payment obligation. Alternatively, plaintiff contends the court should have conducted a plenary hearing to determine the meaning of the phrase "reasonable student loans" in the consent order.

A movant in the Family Part "is entitled to a plenary hearing only when demonstrating the existence of a genuine issue of material fact entitling the party to relief through competent supporting documents and affidavits." Bermeo v. Bermeo, 457 N.J. Super. 77, 83 (App. Div. 2018). "A plenary hearing should only be ordered where . . . there are 'facts in dispute material to a resolution of the motion . . . . Conclusory allegations should be disregarded.'" G.M. v. C.V., 453 N.J. Super. 1, 13 (App. Div. 2018) (second omission in original) (quoting Kanaszka v. Kunen, 313 N.J. Super. 600, 608 (App. Div. 1998)).

Plaintiff was not entitled to a plenary hearing. She did not demonstrate the language of the consent order, including the phrase "reasonable student loans," was ambiguous. See Quinn, 225 N.J. at 44 (finding a hearing may be necessary to determine the parties' intent regarding an ambiguous term). Nor

A-1998-23

did she demonstrate the student loans were unreasonable or the existence of a genuine issue of material fact on that issue. See Bermeo, 457 N.J. Super. at 83 (finding a hearing may be necessary to resolve disputed issues of material fact). She did not, for example, submit a certification of an expert witness, opining the student loans were unreasonable given the parties' respective credit ratings and what was otherwise available in the marketplace. Instead, she made unsupported "[c]onclusory allegations." G.M., 453 N.J. Super. at 13. On this record, plaintiff was not entitled to a plenary hearing.

Plaintiff contends on appeal the court erred in denying her counsel-fee application. The court denied the parties' counsel-fee requests because it found "neither party ha[d] acted in bad faith" and because the court did not have sufficient information to determine the parties' ability to pay. We apply a deferential standard of review to a Family Part's fee-award determination. Bisbing v. Bisbing, 468 N.J. Super. 112, 121 (App. Div. 2021). We will disturb a Family Part decision to grant or deny "counsel fees only on the 'rarest occasion,' and then only because of clear abuse of discretion." Strahan v. Strahan, 402 N.J. Super. 298, 317 (App. Div. 2008) (quoting Rendine v. Pantzer, 141 N.J. 292, 317 (1995)). Perceiving no abuse of discretion, we affirm the denial of plaintiff's counsel-fee application.

A-1998-23

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

*M. C. Harley*

Clerk of the Appellate Division

A-1998-23